**Electronically Filed
Supreme Court
SCWC-12-0000984
14-APR-2015
09:06 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAIʻI

---o0o---

_____

STATE OF HAWAIʻI,
Respondent/Plaintiff-Appellee,

vs.

TOI NOFOA,
Petitioner/Defendant-Appellant.

_____

SCWC-12-0000984

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-12-0000984; CR. NO. 08-1-1504)

April 14, 2015

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, AND WILSON, JJ.

OPINION OF THE COURT BY WILSON, J.

Three principal issues are presented in this appeal from Petitioner Toi Nofoa's convictions for kidnapping and terroristic threatening in the second degree: 1) whether the circuit court erred in instructing the prosecutor to inform the jury during closing arguments that the complaining witness was unavailable because she was dead—a fact not in evidence, 2)

whether the admission of the complaining witness's preliminary hearing testimony at trial violated Nofoa's right to confrontation, and 3) whether the circuit court erred in admitting the 911 call at trial.  We conclude that the circuit court committed error in regards to the first two issues. Because the circuit court's errors were not harmless beyond a reasonable doubt, we vacate the judgment of the Intermediate Court of Appeals (ICA) and remand to the circuit court for a new trial.

## I.    Background

### A.    Pretrial Proceedings

In September 2008, Nofoa was charged by complaint in the District Court of the First Circuit (district court) with terroristic threatening in the first degree in violation of Hawai'i Revised Statutes (HRS) § 707-716(1)(e)[1] and kidnapping in violation of HRS § 707-720(1)(e).[2]  The complaining witness (CW) was Nofoa's former girlfriend.

The district court issued a "Judicial Determination of

---

[1]    At the time of the offense at issue in this case, HRS § 707-716(1)(e) (Supp. 2007) stated, "[a] person commits the offense of terroristic threatening in the first degree if the person commits terroristic threatening . . . [w]ith the use of a dangerous instrument."

[2]    HRS § 707-720(1)(e) (2014) states, as it did at the time of the offense, "[a] person commits the offense of kidnapping if the person intentionally or knowingly restrains another person with intent to . . . [t]errorize that person or a third person[.]"

Probable Cause for the Extended Restraint of Liberty of Warrantless Arrestee" (JDPC) stating that there was probable cause to arrest Nofoa for the offense of kidnapping. An affidavit along with an addendum from the Honolulu Police Department (HPD) supported the JDPC. The addendum to the affidavit contained hearsay statements relaying what CW told a HPD officer and detective regarding the alleged kidnapping and terroristic threatening incidents.

In March 2009, six months after Nofoa was charged with kidnapping and terroristic threatening in the first degree, Nofoa was arrested and charged with CW's murder. A trial followed and Nofoa was acquitted of the murder and related charges.

Following the murder acquittal, the State filed notices of intent to introduce at Nofoa's terroristic threatening and kidnapping trial 1) a transcript of CW's preliminary hearing testimony in the instant case, and 2) a recording of CW's 911 call. Nofoa opposed the admission of this evidence, arguing that it contained inadmissible hearsay statements and that use of the evidence during trial would result in confrontation clause violations. Following a hearing,

the Circuit Court of the First Circuit (circuit court)[3] ruled in the State's favor and allowed the admission of both the preliminary hearing testimony and the 911 call.

The contents of the preliminary hearing testimony and the 911 call, along with the circuit court's disposition of the related pretrial motions are discussed further below.

1. **Preliminary Hearing**

On September 19, 2008, about a week following the incident in question, CW testified at a preliminary hearing before the district court[4] regarding the events of the evening leading up to Nofoa's arrest.

CW testified that she and Nofoa were in a relationship for two and a half years. On September 11, 2008, about a month after Nofoa and CW's relationship ended, CW was working at the Ko Olina resort. While CW was at work, Nofoa called her and asked if she "was seeing another guy." CW responded that it "was none of his business." At approximately 7:00 p.m., CW finished work and proceeded to her car in the hotel parking lot. After entering her car, she saw Nofoa approaching. Nofoa asked to speak with CW and she complied. CW agreed to walk Nofoa to

---

[3] The Honorable Randal K.O. Lee presided over the hearing and over all other circuit court proceedings discussed herein. The Honorable Randal K.O. Lee also presided over Nofoa's murder trial.

[4] The Honorable Leslie Hayashi presided over the preliminary hearing.

his car and during the walk, Nofoa became verbally aggressive and pulled her by the hand. When she attempted to turn around and walk away, he grabbed her from the back and started pulling her by the neck with his forearm. He then reached into a backpack that he had been carrying, grabbed a gun, and shoved it into her neck. He held the gun to her neck, told her he was going to shoot her, and ordered her to get into his car.

Nofoa then drove toward the North Shore. While he was driving, Nofoa asked CW why she wouldn't "give him a chance" and get back with him and while doing so, cried and hit himself, saying that CW had made him this way. Eventually, Nofoa stopped at a gas station in Haleʻiwa to buy alcohol. Nofoa told CW to stay in the car and walked toward the gas station sundry shop. CW "jumped out the door" of the car and walked toward the store. She saw a male working at the gas station and whispered to him to call the police. Nofoa noticed CW exit the car and told her to get back in the car or he would shoot the people in the store. When CW refused, Nofoa picked her up and carried her back into the car. As Nofoa was shoving CW into the car, she began yelling and screaming. CW testified that because she was resisting, Nofoa tried slamming the door while her hands and feet were sticking out of the car. The male she had whispered to, later identified as James Garcia, approached Nofoa's car and

yelled at him to leave CW alone. Nofoa then jumped on CW's lap and tried to close the door while he sat on her.

A female at the gas station, later identified as Ruby McNeil, also yelled at Nofoa, telling him to leave CW alone and informing him that she had called the police. Nofoa then released CW, ordered her out of the car, and drove away from the gas station. Shortly after, Nofoa returned to the gas station and said to CW, "this is not my ending, this is not how it's supposed to end." He then left the gas station. The police arrived approximately ten minutes later.

Defense counsel's cross-examination of CW at the preliminary hearing spanned twenty-one pages of the transcript. Defense counsel asked CW the reason for CW and Nofoa's break up and CW responded that it was because she suspected he was seeing another woman. Defense counsel then questioned CW further about the incident. Regarding the gun, CW stated: "I don't know if . . . it was a toy gun, a plastic gun, a play gun. I knew it was a gun." CW also stated that Nofoa did not hit her during the altercation. Defense counsel asked if Nofoa told her their final destination when they got into his car, to which she answered: "He just said we were going to die." Neither the court nor the prosecutor interrupted the cross-examination of CW during the preliminary hearing.

Prior to trial, the State filed a notice of intent to use CW's preliminary hearing testimony based on her unavailability. Nofoa opposed the motion and filed a motion in limine to exclude the testimony, claiming that the hearing offered insufficient opportunity for cross-examination. At the hearing on the motions, Nofoa's prior defense counsel, who represented him at the preliminary hearing, testified that the only materials available to him to prepare for the hearing were the complaint and the JDPC. Defense counsel had not received and was not aware of 1) a three-page written statement by CW (known as an HPD-252), 2) a thirty-two-page recorded interview of CW,[3] and 3) a five-page police report that included an oral statement by CW. It also appears that defense counsel did not have access to the recording of the 911 call at this time. Nofoa argued that he did not have a meaningful opportunity for cross-examination at the preliminary hearing for two reasons: 1) because preliminary hearings in Hawaiʻi are confined to the issue of probable cause, and 2) because he was not given CW's statements to police prior to the preliminary hearing.

The court allowed the admission of the preliminary hearing testimony, and rejected Nofoa's argument that he was not afforded a full and thorough cross-examination. In reaching its

---

[3] The transcription of CW's recorded interview was not completed until after the preliminary hearing.

decision, the court noted that Nofoa's defense counsel did not specifically request additional discovery and that Nofoa failed to demonstrate how the additional documents would have affected his cross-examination.

### 2. 911 Call

The State also sought a pretrial ruling that the 911 call was admissible at trial. The 911 call reflects that McNeil—one of the gas station employees—called the police right after Nofoa initially left the gas station, stating, "[w]e need a police here for this domestic dispute, please." McNeil told the 911 operator that a girl had been kidnapped. CW then took the phone and stated: "That's my ex and he just kidnapped me all the way from work and brought me all the way up here." She then noted: "I jumped out the car over here. And then I tried to get away, but he was slamming the door on me. And these guys over here called the cops." The 911 dispatcher asked what kind of car Nofoa had been driving, the license plate number, and in what direction the car was heading. The dispatcher concluded the call by stating that someone would be sent to CW's location. CW did not mention that Nofoa had a gun during the 911 call.

At the hearing regarding the 911 call, both Garcia and McNeil testified about what they witnessed at the

Haleʻiwa gas station. Garcia testified that he saw CW outside of the gas station through the store window and that he saw Nofoa grab CW from behind and lift her up while she shouted "'help me, help me.'" Garcia approached Nofoa's car and witnessed Nofoa pulling CW onto his lap while she screamed "'[y]ou're smashing my hand.'" Garcia grabbed the passenger door and said to Nofoa: "'Braddah, braddah, let her go, let her go.'" Nofoa then released CW, and Garcia took CW to the store instructing McNeil to call 911. Garcia described CW as "hysterical," "scared," and "crying." Garcia testified that Nofoa returned to the store and tried to calmly convince CW to leave with him. At this point, CW was "pissed off" and refused to leave with Nofoa. Before Nofoa left, he told CW: "'Sole, I'm not done with you yet.'"

McNeil's testimony corroborated Garcia's testimony. McNeil described CW's emotional state as "hysterical" and "in pain" while she was making the 911 call. McNeil testified that after the 911 call but before the police arrived at the store, Nofoa said in a "very threatening" manner, something like, "'Sole, I'm gonna come back for you.'"

After arguments from the parties, the court granted the State's request to admit the 911 call, stating that it was admissible under the excited utterance hearsay exception and was nontestimonial in nature.

**B. Trial**

During jury selection, the court noted that it did not want references made to the prior case in which Nofoa was acquitted of CW's murder.  Based on the concern that CW's identity might remind the jury of the murder case, defense counsel requested that the court question the jury panel to determine if they were familiar with the facts surrounding the prior case.  Specifically, defense counsel sought to determine whether the jury panel may have heard about a "Hummer" or "Humvee" that had been reported in the media as being at the scene of CW's murder:

> I understand the Court's position that the Court doesn't want to refer to the murder case and I understand why, . . . and the reason why I'm concerned about it is last time when we had voir dire during the murder, the thing that struck me that people seemed to remember was the Hummer, the incident with the Hummer, and they associated that with [CW's] name.

On this basis, defense counsel requested that the court make a statement to the jury panel to determine if they recalled "'an incident in the Ewa Beach area which involved a Humvee or Hummer type sports utility vehicle.'"  The court refused, noting: "[I]n this particular case, no humvee was involved. . . . I don't want the jurors to associate -- this case occurred in 2008, so . . . four years have elapsed.  I don't want the jurors to, one, refer to the homicide -- but we'll play it by ear, we'll see how it goes, okay?"

Following jury selection, the State began its case by calling Garcia and McNeil, whose testimonies were similar to their testimonies at the motion hearing. Both witnesses identified Nofoa as the male they saw with CW on September 11, 2008 and testified that they saw Nofoa pushing CW into the car and slamming the door on her hand because she would not let go. Garcia testified that CW appeared "scared" when she first approached the window of the gas station store and that she was in a "pissed-off state" and "[r]eal mad" after the 911 call. Garcia also testified that Nofoa told CW before he left the gas station: "'Sole, I going get you. We not done yet. I not done with you yet.'"

A CD of the 911 call was played for the jury and admitted into evidence. A CD of CW's preliminary hearing testimony was also played for the jury and admitted into evidence over the defense's objection. Before the preliminary hearing CD was played, the court instructed the jury not to speculate regarding CW's unavailability:

> [U]nder certain circumstances the law permits the court to receive into evidence the testimony given by a witness in another hearing or proceeding who is unavailable to testify at trial. In this case the court has determined that [CW] is unavailable to testify at trial.
>
> You are not to speculate as to the reason why [CW] is unavailable to testify at trial. The testimony given by [CW] in another hearing or proceeding has been received into evidence. Please bear in mind it is your exclusive right to determine whether and to what extent a witness should be believed and give weight to his or her testimony accordingly.

11

Nofoa was the only defense witness. He contended that CW contrived the charges to punish him for his infidelity. Nofoa testified that he met with CW, his ex-fiancé, on September 11, 2008 to drop off a birthday card for her niece. They decided to go to the North Shore, and during the ride, CW became angry with Nofoa, asking him if he was "'taking us to where you took those sluts'" in reference to CW's volleyball teammates he had "mess[ed] around with" in the past at Turtle Bay. Nofoa and CW continued arguing, cursing, and yelling at each other in the car and eventually arrived at the gas station in Haleʻiwa. CW then stated to Nofoa, "'[y]ou going to jail, [a]sshole,'" and walked out of the car headed to the store. Nofoa saw CW making a gesture to the gas station store attendants to call 911 and he then "panicked . . . grabbed her, [and] picked her up" in order to bring her back to the car. As he was trying to put CW into the passenger seat, the cashier came to hold the door and told Nofoa to let CW go. Nofoa complied and CW went back to the store with the cashier. Nofoa drove away from the gas station but then returned and told CW, "'[w]e go home already'" and "'[y]ou causing too much dramas.'" Nofoa denied saying to CW, "'[t]his isn't over,'" and testified that he did not have a gun on the day of the incident. The defense rested following Nofoa's testimony.

12

Prior to closing arguments, the court repeated the instruction it had given the jury regarding the preliminary hearing CD, again stating: "You are not to speculate as to the reason why [CW] is unavailable to testify at trial." The court also informed the jury that the attorneys' comments during closing arguments should not be considered evidence.

During the prosecutor's closing argument, he emphasized the importance of the jury's credibility determination in deciding the case. Regarding Nofoa's testimony, the prosecutor stated: "So when you talk about credibility, you have to ask yourself if that makes sense, or is he telling a cockamamy story . . . ." The prosecutor stated that the jury should think about Nofoa's "demeanor" and "tone of voice" during his testimony and stated that Nofoa was "an arrogant guy." The prosecutor also argued: "[Nofoa] had no good intentions for [CW] at all. He was there because he wanted her to be fearful that she's going to die. And she had no way out." Finally, the prosecutor urged the jury to believe CW's testimony from the preliminary hearing, highlighting the testimony that Nofoa intended to kill CW with his gun: "If you listen to what [CW] says, he was going to kill her, and himself. And he put the gun to her neck."

13

Defense counsel also emphasized the issue of credibility during his closing argument. Specifically, defense counsel stated that CW's 911 call, in which she did not mention a gun, was more credible than her preliminary hearing testimony, during which she did mention the gun. Defense counsel also illustrated CW's motives for lying, including the fact that CW and Nofoa had recently ended their engagement after CW discovered that Nofoa was unfaithful. Defense counsel then asked the jury to determine whether CW or Nofoa was telling the truth, based in part, on the fact that they were able to see Nofoa testify in person:

> And the question that we need to ask at this point is, if what [CW] is saying is true, okay, if it's all true, then why does absolutely nothing back up her story? Not a single witness. Not a single scrap of physical evidence. Nothing. Okay. If her horrible kidnapping story is true, then why does [CW] not have any physical injuries?
>
> . . . .
>
> The reason why nothing backs up her story is because she's not telling the truth about how this night went down. You got to see [Nofoa]. You got to hear him when he testified. He had to answer questions from [the prosecutor]. And he told you what happened on that night. Okay.
>
> On the other side of that coin, what do we know about [CW]? What do we know about her credibility? Okay. We know what kind of car she drives. We know she got a new boyfriend a month after she broke up her two and a half -- well, her two and a half year, long-term relationship broke up. That's about all we know.
>
> Okay. Because you don't know anything about her and her credibility, the only thing that you can do to judge her credibility is to compare her story to any other evidence presented in the trial. That's the only thing you can do, because you didn't get to see, hear, you know, like you did with [Nofoa].

14

At this point, the circuit court interrupted defense counsel's closing argument and asked the attorneys to approach the bench. The circuit court informed defense counsel that he could not "comment on the fact that they were unable to see [CW]" and because defense counsel did so, the jurors should be informed why CW was not present. The court found it necessary to inform the jury regarding CW's unavailability because it concluded that defense counsel opened the door by raising the issue of unavailability during his closing argument:

> THE COURT: And she's deceased. The fact of the matter is, you made it an issue, because you said, you said that he was here. You could see him testify. He could answer questions. She -- when you said that there was no evidence to back her up, that was fine. But you went over the line when you said you never see her testify. You couldn't see how she testified.

The court stated that the appropriate remedy was to allow the prosecutor to inform the jury in rebuttal that CW was "deceased" without saying "how she got deceased." Defense counsel objected, asserting that he did not believe he opened the door to the issue of CW's availability and that his statements related to "arguing about the nature of the hearsay testimony." Defense counsel also objected on the basis that the court sua sponte raised the issue and recommended as an alternative remedy to strike his comment and order the jury to disregard it. The court responded that "throughout the entire trial [the court] indicated that nobody should say why" CW was

15

not at trial and that by stating that the jury was unable to see CW, defense counsel was "commenting that she's available."

Defense counsel continued his closing argument, and at the end of the argument, the court initiated another bench conference to further discuss its concern that defense counsel referred to CW's absence from trial. The court told counsel that the defense's comment could allow for the inference that Nofoa was more credible than CW, because the jury was able to see him at trial, but did not see CW. Defense counsel again objected, noting that his intention in making the argument at issue was to comment on the weight the jury should place on CW's out-of-court statements in comparison to other evidence adduced at trial. Defense counsel repeated his request that the court strike his comment and give a curative instruction instead of allowing the prosecutor to state that CW was dead. The court denied defense counsel's request, and invited the prosecutor to tell the jury that CW was dead: "[The prosecutor] is allowed to say that [CW] was not available because she's deceased. But not why and how she's deceased."

Consistent with the court's direction, the prosecutor then delivered his rebuttal. He began by introducing to the jury an additional fact not in evidence: "[CW] is not here because she's dead." After telling the jury CW was dead, the

16

prosecutor immediately drew the jury's attention to Nofoa's use of a gun to threaten CW, citing CW's preliminary hearing testimony.

The jury found Nofoa guilty of kidnapping and terroristic threatening in the second degree (as an included offense of terroristic threatening in the first degree). The circuit court sentenced Nofoa to 20 years imprisonment for the kidnapping count and 1 year imprisonment for the terroristic threatening count, terms to be served concurrently.

## C.   ICA Appeal

In a Summary Disposition Order (SDO), the ICA affirmed Nofoa's conviction and sentence. State v. Nofoa, No. CAAP-12-984, 2014 WL 406564, at *4 (App. Jan. 31, 2014) (SDO). The ICA held, inter alia, that 1) the circuit court did not display judicial bias by instructing the prosecutor to inform the jury that CW was dead; 2) Nofoa's confrontation rights were not violated when CW's preliminary hearing testimony was admitted into evidence because Nofoa had an adequate opportunity to cross-examine CW at the hearing and had the same motives at trial as he had at the hearing; and 3) the 911 call was properly admitted under the excited utterance hearsay exception and was nontestimonial. Id. at *1-3.

17

## II.  Discussion

**A.  The Circuit Court Abused Its Discretion by Instructing the Prosecutor To Introduce a Fact Not in Evidence and the Error Was Not Harmless Beyond a Reasonable Doubt**

Nofoa asks us to find judicial bias because the circuit court's actions rendered his trial fundamentally unfair. We need not reach the question of judicial bias, however, because we hold that the circuit court abused its discretion by instructing the prosecutor during closing argument to introduce the fact of CW's death to the jury, and the resulting error was not harmless beyond a reasonable doubt.

A trial judge has broad discretion to control the scope of closing arguments. See State v. Adams, 61 Haw. 233, 234, 602 P.2d 520, 521 (1979) (per curiam).  However, as with other aspects of a trial in which the judge is granted great latitude, an abuse of discretion occurs if the trial court has "clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant."  Amfac, Inc. v. Waikiki Beachcomber Inv. Co., 74 Haw. 85, 114, 839 P.2d 10, 26 (1992) (citing State v. Akina, 73 Haw. 75, 78, 828 P.2d 269, 271 (1992)); see also Larez v. Holcomb, 16 F.3d 1513, 1520-21 (9th Cir. 1994) (reviewing court's control of closing arguments for abuse of discretion);

18

United States v. Diaz, 961 F.2d 1417, 1418 (9th Cir. 1992) (same); Adams, 61 Haw. at 234, 602 P.2d at 521 (same).

Here, the circuit court abused its discretion because its actions permitted the prosecutor to present to the jury a fact not in evidence that resulted in substantial prejudice to Nofoa. To support this conclusion, we draw from our court's jurisprudence analyzing the consequence of a prosecutor introducing facts outside the evidence during closing argument. Although these cases examine the issue under the framework of prosecutorial misconduct, they are informative here, where the effect of the court's instruction was to allow the State to introduce to the jury a fact not in evidence.

During closing arguments, prosecutors are "permitted to draw reasonable inferences from the evidence and wide latitude is allowed in discussing the evidence." State v. Clark, 83 Hawaiʻi 289, 304, 926 P.2d 194, 209 (1996) (citing State v. Apilando, 79 Hawaiʻi 128, 141–42, 900 P.2d 135, 148 (1995)). However, we have held that a prosecutor's comments are improper when they go beyond the record to discuss "matters outside the evidence adduced at trial." State v. Tuua, 125 Hawaiʻi 10, 14, 250 P.3d 273, 277 (2011). Thus, in State v. Tuua, we held that a prosecutor's comments were improper because they referred to the consequences of the jury's verdict. Id.

19

Specifically, during closing arguments, the prosecutor stated that the defendant's brother could not be successfully prosecuted at a subsequent proceeding. Id. at 15, 250 P.3d at 278. The prosecutor's apparent purpose in making this comment was to dissuade the jurors from concluding that if they found the defendant not guilty, his brother could be held responsible for the assault at issue. Id. The court concluded that the prosecutor's comments, although "couched . . . as an attack on . . . credibility" were improper because they "were not based on the evidence in the record." Id.

More recently, in State v. Basham, we determined that a prosecutor's comment during closing arguments that the defendant lied to the police bypassed evidentiary rules and was thus improper. 132 Hawaiʻi 97, 114-15, 319 P.3d 1105, 1122-23 (2014). We noted with concern that the defendant's fundamental right to confront the State's evidence may be compromised when a fact not presented at trial is referenced by the prosecutor during closing. Id. at 112-13, 319 P.3d at 1120-21 (citing United States v. Klebig, 600 F.3d 700, 721 (7th Cir. 2009)).

Here, as in Tuua and Basham, the prosecutor's comment that CW was deceased caused the jury to hear a fact—for the first time—which had intentionally not been presented during trial by either party. Indeed, the circuit court specifically

20

told the jury both prior to playing CW's preliminary hearing testimony and again at the close of evidence "not to speculate as to the reason why [CW] is unavailable to testify at trial." In addition, during jury selection, the court demonstrated concern that the jurors would associate CW's death with the instant case, noting that he did not want any reference to the Humvee involved in CW's murder case to be raised before the prospective jurors. Nonetheless, the circuit court reversed its position during closing arguments, instructing the prosecutor to inform the jury of CW's death in an apparent attempt to cure the defense's "opening the door" on the issue of CW's availability.[5] The court directed the prosecutor to inform the jurors of a prejudicial fact not in evidence despite defense counsel's repeated objections, and in doing so, abused its discretion.

Because we cannot conclude that the introduction of the fact not in evidence was harmless beyond a reasonable doubt, we remand the case for a new trial. Under the harmless error standard, we "must 'determine whether there is a reasonable possibility that the error complained of might have contributed to the conviction.'" State v. Pauline, 100 Hawaiʻi 356, 378, 60 P.3d 306, 328 (2002) (quoting State v. White, 92 Hawaiʻi 192,

---

[5] We need not reach the question of whether defense counsel opened the door during his closing argument. Even assuming the "opening the door" doctrine would be applicable in this context, the remedy of introducing CW's death was inappropriate.

198, 990 P.2d 90, 96 (1999)).  If there is such a reasonable possibility, then the error is not harmless beyond a reasonable doubt, and the conviction must be set aside.  State v. Gano, 92 Hawaiʻi 161, 176, 988 P.2d 1153, 1168 (1999) (citing State v. Pulse, 83 Hawaiʻi 229, 248, 925 P.2d 797, 816 (1996)); see also Tuua, 125 Hawaiʻi at 16, 250 P.3d at 279 ("An improper comment warrants a new trial if 'there is a reasonable possibility that the error complained of might have contributed to the conviction.'" (quoting State v. Hauge, 103 Hawaiʻi 38, 47, 79 P.3d 131, 140 (2003)).  Here, several factors evince a reasonable possibility that the circuit court's error contributed to Nofoa's conviction.

For one, there is a reasonable possibility that the introduction of the fact not in evidence allowed the jury to infer that Nofoa played a role in CW's death, resulting in substantial prejudice to Nofoa.  The State contends such an inference was unlikely.  However, given the evidence adduced at trial and the content of the State's closing arguments, we disagree.  See Gano, 92 Hawaiʻi at 176, 988 P.2d at 1168 (stating error "'must be examined in light of the entire proceedings and given the effect to which the whole record shows it is entitled'" (quoting State v. Heard, 64 Haw. 193, 194, 638 P.2d

307, 308 (1981))).  At trial, the jury heard evidence that Nofoa used a gun to threaten his ex-girlfriend during the incident: he "shoved" a gun into her neck; told her that they "were going to die"; and said to her, "'Sole, I going get you. . . . I not done with you yet.'"  Such evidence coupled with hearing that CW was in fact dead, would allow the jury to improperly infer that Nofoa indeed acted on his threat to fatally harm CW.

Moreover, during the State's closing argument, the prosecutor emphasized the testimony regarding Nofoa's threats to kill CW, stating: "[Nofoa] had no good intentions for CW at all. He was there because he wanted her to be fearful that she's going to die.  And she had no way out."  The prosecutor also highlighted the presence of the gun, noting: "If you listen to what [CW] says, he was going to kill her, and himself.  And he put the gun to her neck."  Thus, when the jurors heard that CW was deceased during the prosecutor's rebuttal argument, they had fresh in their minds Nofoa's purported desire to kill CW as well as his apparent ability to carry out the threats by using the gun in his possession.

Under these circumstances, it would have been reasonable for the jury to conclude—or at least consider the possibility—that Nofoa caused CW's death.  Accordingly, the circuit court's error resulted in a risk of undue prejudice to

23

Nofoa, because it "divert[ed] [the jurors], by injecting an issue wholly unrelated to [Nofoa's] guilt or innocence into their deliberations, from their duty to decide the case on the evidence."  State v. Pacheco, 96 Hawaiʻi 83, 95, 26 P.3d 572, 584 (2001); cf. Hawaiʻi Rules of Evidence (HRE) Rule 404(b) (Supp. 1994) ("Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.").

The timing of the introduction of the fact not in evidence is also relevant.  We have previously noted that "'the prosecutor's argument is likely to have significant persuasive force with the jury.'"  Basham, 132 Hawaiʻi at 115, 319 P.3d at 1123 (quoting State v. Klinge, 92 Hawaiʻi 577, 592, 994 P.2d 509, 524 (2000)).  Here, introduction of CW's death during the prosecutor's rebuttal distinguished it as one of the last facts heard by the jury prior to deliberations, further exacerbating the risk of prejudice.  That CW's death was introduced during the State's rebuttal precluded Nofoa from confronting it, for example, by informing the jury that as a matter of law, he was not responsible for CW's death.  See, e.g., Lucas v. United States, 102 A.3d 270, 279 (D.C. 2014) ("'[I]mproper prosecutorial comments are looked upon with special disfavor

24

when they appear in the rebuttal because at that point defense counsel has no opportunity to contest or clarify what the prosecutor has said.'" (quoting Anthony v. United States, 935 A.2d 275, 284 (D.C. 2007))).

The lack of a limiting instruction also compounded the effect of the prosecutor's comment.  Specifically, the court failed to instruct the jurors that CW's death should not be considered as evidence of Nofoa's guilt in the terroristic threatening and kidnapping case.[6]  Cf. State v. Murray, 116 Hawaiʻi 3, 19, 169 P.3d 955, 971 (2007) (holding "[t]he potential for undue prejudice is so great that failure to give a limiting instruction with regard to prior convictions" results in error "even if the defendant has not requested one" (citing Evans v. Cowan, 506 F.2d 1248, 1249 (6th Cir. 1974))); State v. Cordeiro, 99 Hawaiʻi 390, 416, 56 P.3d 692, 718 (2002) (holding potential for unfair prejudice related to evidentiary issue "dispelled by the circuit court's limiting instruction to the jury").

---

[6]     Prior to closing arguments, the circuit court did instruct the jury that arguments of counsel were not evidence.  However, given the generic nature of the instruction and that the court provided no specific instruction in relation to the prosecutor commenting on CW's death, the court's instruction failed to mitigate the prejudice to Nofoa.  See State v. Rogan, 91 Hawaiʻi 405, 415, 984 P.2d 1231, 1241 (1999) (holding instruction to jury that counsels' arguments were not evidence did not "negate[] the prejudicial effect" of the prosecutor's inflammatory comments); State v. Marsh, 68 Haw. 659, 661, 728 P.2d 1301, 1302-03 (1986) (holding prejudicial effect of prosecutor's comment not "rendered harmless" by court's general instruction "that the arguments of counsel are not evidence").

Moreover, the circuit court's direction to the prosecutor to present a fact not in evidence refuted the court's prior unavailability instruction—twice given—that the jury not speculate as to the reason for CW's unavailability. The contrast between the prior instruction and the reference to CW's death in closing heightened the potential for juror confusion and prejudice to Nofoa.

For the foregoing reasons, we conclude that the circuit court abused its discretion in instructing the State to introduce a fact not in evidence and there is a reasonable possibility that the error might have contributed to Nofoa's conviction.

**B.   Admission of CW's Preliminary Hearing Testimony at Trial Resulted in a Confrontation Clause Violation Requiring Remand**

Nofoa additionally contends that the ICA erred when it found that the preliminary hearing provided him with an opportunity to effectively cross-examine CW. In this regard, Nofoa asks that we create a "bright-line rule" barring the use of preliminary hearing testimony at trial. We decline to do so. Instead we hold that in this case, because only limited discovery was provided to Nofoa at the preliminary hearing, and later discovery contained significant inconsistencies, the preliminary hearing did not provide a meaningful opportunity for

cross-examination, resulting in a violation of Nofoa's right to confrontation under article I, section 14 of the Hawaiʻi Constitution and the sixth amendment of the United States Constitution. Because this error was not harmless beyond a reasonable doubt, it provides an independent basis for vacating the ICA's judgment and remanding to the circuit court for a new trial.[7]

The confrontation clauses of article I, section 14 of the Hawaiʻi Constitution and the sixth amendment of the United States Constitution require that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against" him or her. In Crawford v. Washington, the Supreme Court of the United States held that testimonial out-of-court witness statements are barred under the confrontation clause of the sixth amendment, unless the witness is 1) unavailable; and 2) the defendant had a prior opportunity for cross-examination. 541 U.S. 36, 59 (2004). In State v. Fields, we explained that under Crawford, "the admissibility of testimonial hearsay [is] governed by the following standard: where a hearsay declarant's unavailability has been shown, the testimonial statement is admissible for the truth of the matter

---

[7] "'We review questions of constitutional law de novo, under the right/wrong standard.'" State v. Kalaola, 124 Hawaiʻi 43, 49, 237 P.3d 1109, 1115 (2010) (quoting Jou v. Dai-Tokyo Royal State Ins. Co., 116 Hawaiʻi 159, 164-65, 172 P.3d 471, 476-77 (2007)).

asserted only if the defendant was afforded a prior opportunity to cross-examine the absent declarant about the statement." 115 Hawaiʻi 503, 516, 168 P.3d 955, 968 (2007) (citing Crawford, 541 U.S. at 68). We additionally determined that Crawford does not prohibit the admission of a prior out-of-court statement where "the hearsay declarant is cross-examined at trial about the out-of-court statement." Id. at 523, 168 P.3d at 975. In so holding, we noted that even prior to Crawford, our jurisprudence supported the proposition that "sufficient cross-examination of the hearsay declarant at trial terminated the [confrontation clause] inquiry." Id. (emphasis added). Ultimately, we concluded that Fields was "afforded a meaningful opportunity" to cross-examine the witness at trial regarding the subject matter of the out-of-court statement. Id. at 528, 168 P.3d at 980 (emphasis added). Unlike Fields, here CW did not appear at trial to testify as to her out-of-court statement. Nonetheless, our discussion in Fields acknowledges that the right to confront a witness is not satisfied simply by any cross-examination, but instead, that the cross-examination must be sufficient and meaningful.

Preliminary hearing testimony constitutes testimonial hearsay and is thus subject to the two-part test of admissibility laid out in Crawford and Fields. Fields, 115

28

Hawaiʻi at 513, 168 P.3d at 965. Here, because there is no question as to CW's unavailability at trial, the admissibility of CW's preliminary hearing testimony rests on whether the preliminary hearing provided Nofoa with a sufficient and meaningful opportunity for cross-examination.

Post-Crawford and Fields, our court has not developed a standard to determine under what circumstances cross-examination at a preliminary hearing provides the defendant with a sufficient opportunity to confront a witness. To advance such a standard, we are guided by our pre-Crawford cases as well as cases from other jurisdictions that examined the issue post-Crawford.

In State v. Faafiti, for example, we determined that a preliminary hearing transcript was admissible at trial where cross-examination of the witness at the preliminary hearing had been extensive and thorough. 54 Haw. 637, 641, 513 P.2d 697, 701 (1973). In so holding, we rejected the defendant's argument that the cross-examination was not sufficient because a "'preliminary hearing in Hawai[ʻ]i is limited to [the] question of probable cause.'" Id. However, we recognized the importance of allowing unrestricted cross-examination at the preliminary hearing stage, stating: "We also advise the district judges to permit the counsel for a defendant to examine fully and

29

thoroughly witnesses at all preliminary hearings." Id. at 641-42 n.4, 513 P.2d at 701 n.4.

In Toledo v. Lam, 67 Haw. 20, 22, 675 P.2d 773, 775 (1984), we questioned the admissibility of preliminary hearing testimony at trial where the defendant did not have access to relevant discovery during the preliminary hearing. In Toledo, during the preliminary hearing at issue, the trial judge denied the defendant's request to produce a statement relied upon by a State witness. Id. Toledo filed a writ of prohibition mid-hearing arguing, inter alia, that she was denied the opportunity to effectively cross-examine the State's witness because her counsel did not have access to the relevant statement. Id. at 21-22, 675 P.2d at 774-75. While we denied the extraordinary writ, we noted that "[n]ormally, a cross-examination cannot be full and thorough unless counsel is permitted access to the witness' [sic] previous statements on the matters on which the witness is testifying . . . ." Id. at 22, 675 P.2d at 775. We acknowledged that while discovery issues are within the judge's discretion, typically, such "disclosure will be necessary to the exercise of the right of effective cross-examination." Id. Finally, we stated that "withholding of such matters by the State may well prevent its later use of the witness' [sic]

30

preliminary hearing testimony if the witness is unavailable at trial." Id. at 22-23, 675 P.2d at 776.

In Faafiti and Toledo, we recognized two relevant factors in determining the admissibility of preliminary hearing testimony at trial: 1) the restrictions placed on the cross-examination by the trial court, and 2) the discovery available to counsel at the time of the hearing in relation to the effectiveness of cross-examination. These factors have also been recognized by other jurisdictions post-Crawford as relevant in determining whether sufficient opportunity for cross-examination is afforded during preliminary hearings, and in turn whether preliminary hearing testimony is admissible at trial.

In Chavez v. State, for example, the Nevada Supreme Court considered the admissibility of preliminary hearing testimony at trial, and found that the testimony was admissible where the defendant was able to engage in "wide-ranging cross-examination" during the preliminary hearing when "nearly all the discovery was complete." 213 P.3d 476, 485 (Nev. 2009) (per curiam). The court specifically noted that during the preliminary hearing, the defendant "had a copy of [the witness's] videotaped statements to police" and used this to question the witness about the alleged incident of sexual abuse. Id. The court also recognized that the magistrate judge who

presided over the preliminary hearing provided the defendant with a full opportunity to cross-examine the relevant witness, specifically noting that there was no evidence of any "inappropriate restrictions on the scope" of the cross-examination placed by the judge.  Id.  Accordingly, the court held that the defendant was permitted to exercise his right to confrontation: "Therefore, in this instance, because the discovery was almost entirely complete and the magistrate judge allowed [the defendant] unrestricted opportunity to confront [the witness] on all the pertinent issues, we conclude that [the defendant's] [c]onfrontation [c]lause rights were not violated by the admission of [the witness's] preliminary hearing testimony at trial."  Id. at 485-86.

Similarly, in People v. Torres, the Supreme Court of Illinois considered several factors in determining that the defendant did not have an adequate opportunity for cross-examination of the prosecution's key witness during the preliminary hearing.  962 N.E.2d 919, 932-34 (Ill. 2012).  First, the court considered the motive and focus of the examination at the preliminary hearing, concluding that at both the hearing and at trial, "the focus of questioning is whether the evidence supports a finding that the defendant committed the charged crime."  Id. at 931.  The court noted, however, that

32

"the motive-and-focus test" could not be the "sole guide to a resolution" of the case.  Id. at 932.

Thus, the court considered two additional factors: defense counsel's knowledge at the time of the cross-examination, including access to discovery; and the court's restrictions on defense counsel's cross-examination.  Id. at 932-33.  On the issue of defense counsel's knowledge at the time of the preliminary hearing, Torres argued that his counsel did not have an adequate opportunity for cross-examination, because he did not have access to certain discovery, "namely police reports," which contained the prosecution witness's statements to police.  Id. at 923.  Defense counsel referenced several statements the witness made to police that were inconsistent with his preliminary hearing testimony.  Id.  The court agreed with Torres on this issue, stating that the defendant "was not privy to the inconsistent statements [the prosecution's witness] gave to police, statements that counsel might have used to confront [the witness] and see if further changes in [his] version of events might be forthcoming."  Id. at 933.  The court additionally took issue with the trial court's restrictions on counsel during the cross-examination, noting that the trial court had sustained objections to defense counsel's cross-examination that inhibited his ability to adequately cross-

examine the witness.  Id.  Accordingly, the court concluded that the trial court erred in admitting the preliminary hearing testimony at trial.  Id.

We recognize that some jurisdictions have endorsed a complete ban on the use of preliminary hearing testimony at trial, while others have been more permissive of the inclusion of such testimony, based on the nature of the proceedings.  See, e.g., People v. Fry, 92 P.3d 970, 972 (Colo. 2004) (en banc) (holding preliminary hearings in Colorado do not provide adequate opportunity for cross-examination); State v. Lopez, 258 P.3d 458, 463 (N.M. 2011) (holding admission of preliminary hearing testimony did not violate the sixth amendment where defendant's motive during cross-examination was the same as at trial).  However, guided by our pre-Crawford cases, we adopt the approach of Chavez and Torres and consider the admissibility of preliminary hearing testimony at trial on a case-by-case basis.

Drawing from these cases, in order to determine whether Nofoa had a sufficient and meaningful opportunity for cross-examination at the preliminary hearing, we consider the following factors: 1) the motive and purpose of the cross-examination, 2) whether any restrictions were placed on Nofoa's cross-examination during the preliminary hearing, and 3) whether

34

Nofoa had access to sufficient discovery at trial to allow for effective cross-examination of CW.

The first two questions weigh in favor of admissibility. First, the motive and purpose of Nofoa's cross-examination of CW at the preliminary hearing was sufficiently similar to the motive and purpose Nofoa would have had to cross-examine CW at trial, i.e., to discredit the State's case and accordingly CW's testimony. Second, it does not appear that the court restricted Nofoa's cross-examination of CW at the preliminary hearing. The cross-examination spanned twenty-one pages of the transcript and the court did not interrupt during the questioning nor did the State make any objections.

However, we agree with Nofoa that in relation to the third factor, he was denied the opportunity for meaningful cross-examination because he did not have access to relevant discovery materials that would have assisted in the cross-examination of CW. We have recognized that access to witness statements may be relevant to determine whether the opportunity for cross-examination at a preliminary hearing was sufficient. See Toledo, 67 Haw. at 22, 675 P.2d at 775 ("Normally, a cross-examination cannot be full and thorough unless counsel is permitted access to the witness' [sic] previous statements on the matters on which the witness is testifying . . . ."); see

35

also <u>Torres</u>, 962 N.E.2d at 933 (noting defense counsel at the preliminary hearing was "not privy" to certain statements given by the witness to support holding that preliminary hearing testimony was inadmissible at trial).  Here, at the preliminary hearing, the only materials in Nofoa's counsel's possession were the JDPC and the complaint.  He lacked several of CW's statements, including her handwritten HPD-252 statement, a thirty-two-page recorded interview, and a five-page police report that included CW's oral statement.  It also does not appear that Nofoa's counsel had access to or knowledge of the 911 call at the time of the preliminary hearing.

Access to these discovery materials would have enabled Nofoa's defense counsel to pose questions relevant to a central issue of the defense—CW's credibility—particularly because there were inconsistencies and/or discrepancies between CW's preliminary hearing testimony and her earlier statements.  For example, at the preliminary hearing, CW testified that Nofoa used a gun to threaten her.  However, during the 911 call, no gun is mentioned.  Further, during the preliminary hearing, CW stated that on the day of the incident, Nofoa called her at work to ask her if she was seeing another man, to which she responded it was "none of his business."  However, in her HPD-252 statement and the thirty-two-page recorded interview, CW stated

that when Nofoa asked her if she "was with the [g]uy" or "with another guy," she answered Nofoa in the affirmative.

Had Nofoa's counsel been aware of these discrepancies, he "might have used [them] to confront [CW] and see if further changes in [CW's] version of events might be forthcoming." Torres, 962 N.E.2d at 933. However, because Nofoa only had access to the JDPC and the complaint, he was unable to engage in "effective cross-examination," Toledo, 67 Haw. at 22, 675 P.2d at 775, of two critical defense issues: CW's credibility and his use of a gun. In light of the unrebutted fact of CW's death improperly admitted during the prosecutor's rebuttal argument, the latter issue was of particular importance, as discussed supra. In sum, given the lost opportunity to confront CW in relation to the unavailable discovery, the admission of the preliminary hearing testimony at trial violated Nofoa's right to confrontation as guaranteed by article I, section 14 of the Hawaiʻi Constitution and the sixth amendment of the United States Constitution.

Thus, we hold that the circuit court erred in allowing admission of CW's preliminary hearing testimony at trial. We additionally hold that the error was not harmless beyond a reasonable doubt. See State v. Mundon, 121 Hawaiʻi 339, 368, 219 P.3d 1126, 1155 (2009) (holding constitutional error may be

37

harmless if court can "'declare a belief that it was harmless beyond a reasonable doubt'" (quoting State v. Napeahi, 57 Haw. 365, 373, 556 P.2d 569, 574 (1976))).  We are unable to say the error was harmless beyond a reasonable doubt because CW's preliminary hearing testimony was a crucial piece of evidence presented by the State.  It was the only evidence at trial that mentioned Nofoa's possession of a gun and accordingly was the only evidence to support the State's first degree terroristic threatening case.[8]  Although Garcia's and McNeil's testimony and the 911 call provided evidence corroborating some of the preliminary hearing testimony, we believe there is at least a reasonable possibility that the preliminary hearing testimony might have contributed to Nofoa's conviction.  See Pauline, 100 Hawaiʻi at 378, 60 P.3d at 328.  This is particularly true because the case involved a credibility determination between CW and Nofoa, and CW's preliminary hearing testimony directly conflicted with Nofoa's testimony at trial.  Accordingly, because there is a reasonable possibility that the admission of

---

[8]     The jury found Nofoa guilty of the lesser included offense of terroristic threatening in the second degree, which did not require the use of "a dangerous instrument."  Compare HRS § 707-716(1)(e) (Supp. 2007) ("A person commits the offense of terroristic threatening in the first degree if the person commits terroristic threatening . . . [w]ith the use of a dangerous instrument.") with HRS § 707-717(1) (2014) ("A person commits the offense of terroristic threatening in the second degree if the person commits terroristic threatening other than as provided in section 707-716.").

Notwithstanding, the importance that the State placed on the preliminary hearing testimony is evinced by its decision to charge Nofoa with the first degree crime.

the preliminary hearing testimony at trial might have contributed to Nofoa's conviction, we remand to the circuit court for a new trial.[9]

## C. The 911 Call Was Properly Admitted as a Hearsay Exception and Did Not Result in a Confrontation Clause Violation

With the purpose of providing guidance to the circuit court and the parties on remand, we address Nofoa's claim regarding the admissibility of the 911 call. See Basham, 132 Hawaiʻi at 112, 319 P.3d at 1120.

Nofoa contends that the circuit court erred in admitting the 911 call because 1) it did not qualify under the excited utterance hearsay exception; and 2) it was testimonial in nature and not subject to cross-examination, and thus violated his right to confrontation.[10] We disagree.

Pursuant to HRE Rule 803(b)(2) (1993), "[a] statement relating to a startling event or condition made while the

_____

[9] Because we find error in the court's admission of the preliminary hearing testimony, we need not reach Nofoa's argument that the court abused its discretion in providing a recording of the preliminary hearing testimony to the jury during deliberations. However, we note that the trial court is not required to provide all evidence admitted at trial to the jury during deliberations. See, e.g., State v. Kassebeer, 118 Hawaiʻi 493, 506, 193 P.3d 409, 422 (2008) (reviewing trial court's decision to allow handgun that was admitted into evidence into jury room for abuse of discretion).

[10] We review both questions de novo under the right/wrong standard. See State v. Moore, 82 Hawaiʻi 202, 217, 921 P.2d 122, 137 (1996) ("[W]here the admissibility of evidence is determined by application of the hearsay rule, there can be only one correct result, and 'the appropriate standard for appellate review is the right/wrong standard.'" (quoting Kealoha v. County of Hawaiʻi, 74 Haw. 308, 319, 844 P.2d 670, 675 (1993))); Kalaola, 124 Hawaiʻi at 49, 237 P.3d at 1115 (holding constitutional questions reviewed de novo under the right/wrong standard).

declarant was under the stress of excitement caused by the event or condition" is admissible hearsay.  In State v. Machado, we explained that to qualify under this hearsay exception (i.e., an "excited utterance"), "the proponent of the statement must establish that: (1) a startling event or condition occurred; (2) the statement was made while the declarant was under the stress of excitement caused by the event or condition; and (3) the statement relates to the startling event or condition."  109 Hawaiʻi 445, 451, 127 P.3d 941, 947 (2006).  Nofoa only disputes the second requirement, claiming that CW was not in fact "under the stress of excitement" during the call.  Garcia's and McNeil's testimony at the hearing regarding the 911 call refute Nofoa's claim.  Garcia described CW as "hysterical," "scared," and "crying" at the time of the incident and said that CW was "pissed" when she was on the phone.  Similarly, at the time McNeil passed the phone to CW so that she could speak to the 911 dispatcher, McNeil described CW's emotional state as "hysterical" and "in pain."  Considered along with the other circumstances surrounding the 911 call, this testimony demonstrates that CW's statement was not the product of reflective thought and instead constituted an excited utterance. See State v. Delos Santos, 124 Hawaiʻi 130, 138, 238 P.3d 162, 170 (2010) (citing evidence that complainant was "'shaken'"

40

"'crying'" and "'in a lot of pain'" to determine that complainant's "mental and physical condition supports the prosecution's argument that her statement was an excited utterance").

Nofoa's claim that the 911 call violated his right to confrontation is also unavailing. To be subject to the confrontation clause analysis discussed above, the out-of-court statement must be testimonial in nature. Fields, 115 Hawaiʻi at 516, 168 P.3d at 968. Statements are considered "'nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency.'" Id. at 514, 168 P.3d at 966 (quoting Davis v. Washington, 547 U.S. 813, 822 (2006)). Testimonial statements, in contrast, involve circumstances that "'objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.'" Id. (quoting Davis, 547 U.S. at 822).

CW's statements during the 911 call were nontestimonial because "any reasonable listener would recognize that [CW] . . . was facing an ongoing emergency" and the purpose of the call was to request police assistance. Davis, 547 U.S.

41

at 827.  At the beginning of the 911 call, McNeil told the operator: "We need a police here for this domestic dispute, please."  CW's statements occurred outside the presence of police protection and CW was still facing the threat of violence from Nofoa when the call was placed, as Nofoa had just left the gas station.  Moreover, the questions asked by the dispatcher, i.e., the type of car Nofoa was driving, the direction in which he was heading, and the car's license plate number, demonstrate a purpose of finding Nofoa to prevent further harm or stated otherwise, to "resolve the present emergency, rather than simply to learn . . . what had happened in the past."  Davis, 547 U.S. at 827.

Because CW's statements were nontestimonial, the two-part test from Ohio v. Roberts, 448 U.S. 56 (1980), applies.  See Fields, 115 Hawaiʻi at 516, 168 P.3d at 968 ("We therefore reaffirm Roberts' continued viability with respect to nontestimonial hearsay.").[11]  Under Roberts, a nontestimonial out-of-court statement is admissible if "(1) the declarant is 'unavailable,' and (2) the statement bears some indicia of reliability."  Fields, 115 Hawaiʻi at 528, 168 P.3d at 980.  As previously noted, CW's unavailability is undisputed.  Regarding

_____

[11]    Roberts was abrogated by Crawford but is still applicable in relation to nontestimonial hearsay.  Fields, 115 Hawaiʻi at 516, 168 P.3d at 968.

the second requirement, CW's 911 call statements were sufficiently reliable because they fell "'within a firmly rooted hearsay exception,'" as discussed above.  State v. Sua, 92 Hawaiʻi 61, 71, 987 P.2d 959, 969 (1999) (quoting State v. Ortiz, 74 Haw. 343, 361, 845 P.2d 547, 556 (1993)).  Accordingly, the 911 call was admissible.[12]

### III. Conclusion

For the foregoing reasons, the ICA's March 3, 2014 judgment on appeal and the circuit court's October 9, 2012 judgment of conviction and sentence are vacated.  This case is remanded to the circuit court for a new trial.

Craig W. Jerome and            /s/ Mark E. Recktenwald
Susan L. Arnett
for petitioner                 /s/ Paula A. Nakayama

Sonja P. McCullen              /s/ Sabrina S. McKenna
for respondent
                               /s/ Richard W. Pollack

                               /s/ Michael D. Wilson



---

[12]    We also agree with the ICA that "Nofoa fails to prove that portions of the 911 call were inadmissible on other grounds."  Nofoa, SDO at *3.