Electronically Filed
Supreme Court
SCWC-14-0001217
21-JUN-2017
08:18 AM

IN THE SUPREME COURT OF THE STATE OF HAWAIʻI

---o0o---

STATE OF HAWAIʻI,
Respondent/Plaintiff-Appellee,

vs.

JAMAL MCGHEE,
Petitioner/Defendant-Appellant.

SCWC-14-0001217

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-14-0001217; CASE NO. 1DCW-14-0002729)

JUNE 21, 2017

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, AND WILSON, JJ.

OPINION OF THE COURT BY POLLACK, J.

During closing argument in the defendant's bench trial, the prosecutor read a portion of the complainant's prior statement to the police although its contents had not been admitted into evidence.  We conclude that the reading of the

statement violated the defendant's substantial rights.  We also clarify that evidence proffered in a terroristic threatening prosecution of the presence or absence of the complainant's fear, that is incidental to the defendant's alleged words or conduct, is relevant to the "true threat" and state of mind requirements of this offense.

## I.  BACKGROUND

### A. District Court Proceedings

Jamal McGhee was charged by complaint with threatening "by word or conduct to cause bodily injury to [Edithe Kearney], in reckless disregard of the risk of terrorizing [her] thereby committing the offense of Terroristic Threatening in the Second Degree, in violation of [Hawaii Revised Statutes (HRS) §] 707-717(1)."[1]  McGhee waived his right to a jury trial in the

---

[1]     HRS § 707-717 (2014) states as follows:

(1) A person commits the offense of terroristic threatening in the second degree if the person commits terroristic threatening other than as provided in section 707-716.

(2) Terroristic threatening in the second degree is a misdemeanor.

HRS § 707-715 defines terroristic threatening as follows:

A person commits the offense of terroristic threatening if the person threatens, by word or conduct, to cause bodily injury to another person or serious damage or harm to property, including the pets or livestock, of another or to commit a felony:

(continued . . .)

District Court of the First Circuit (district court) and entered a plea of not guilty.[2]  At the bench trial,[3] Kearney and McGhee were the only witnesses.

Kearney testified that she is the owner of a club called Alley Cat located on O'ahu.  Kearney indicated that Alley Cat is very small in size--the number of patrons can be from ten to twenty--and the club does not get loud.  On June 12, 2014, around 2:00 a.m., McGhee came to Alley Cat.  Kearney testified that McGhee was upset with an Alley Cat employee who was at the front door.  Kearney stated that she was inside by the bar, about three yards from the front door, when she heard McGhee-- who she described as very loud--screaming, swearing, cursing, and threatening everyone.  As a result of McGhee's yelling and threatening, Kearney went outside the club.  Kearney testified that McGhee was very upset and threatened her, saying that he "can kill me, can beat me up, that sort of thing."  Kearney stated that she felt threatened by McGhee's remarks, and she

---

(. . . continued)

> (1) With the intent to terrorize, or in reckless disregard
> of the risk of terrorizing, another person[.] . . .

HRS § 707-715(1) (2014).

[2]    McGhee was also charged with harassment, but this charge was dismissed on motion of the State.

[3]    The Honorable Linda K. C. Luke presided.

called the police because he did not calm down.  The police arrived more than ten minutes later, but by then, McGhee had already left the area with the help of Gloria Pancho, McGhee's girlfriend and Kearney's former employee.

On cross-examination, Kearney testified that she did not call the police upon hearing McGhee from inside the club because she thought she or Pancho could calm McGhee down. Despite McGhee's yelling, Kearney felt it was okay to go outside because "I mean, I'm almost 70.  I'm not afraid to be -- if he wants to kill me, kill me."

Upon the conclusion of Kearney's testimony, the State rested.  McGhee moved for judgment of acquittal, which motion the district court denied, and the defense presented its evidence.

McGhee, who was then 43 years old, testified that he went to Alley Cat to pick up his key from his girlfriend. McGhee related that while waiting outside--at least 30 or 35 feet from the front door because he had already had problems with Alley Cat--he was smoking a cigarette and not yelling. McGhee testified that Kearney "was kind of hidden in the bushes" and that he did not see her until the police arrived.  Later in his testimony, McGhee clarified that Kearney was not in the bushes; it was just that he did not see her because it was dark.

4

McGhee explained that had he seen Kearney, he would have left because she always called the police on him. McGhee stated that Kearney called the police on that day because she did not like him to be around Alley Cat.

Following the close of McGhee's case, the prosecutor presented his closing argument. The prosecutor argued that Kearney's testimony was credible. The prosecutor pointed out that Kearney was 70 years old and that, even given Kearney's physical stature, she was not concerned for herself but rather for her employees. The prosecutor contended that McGhee was "hysterical" on the day in question and essentially made up a story. The prosecutor challenged McGhee's credibility, arguing that McGhee initially testified that Kearney was hiding in the bushes, but he later testified that Kearney was not hiding there. The prosecutor thus concluded that McGhee's testimony was not credible.

Defense counsel in his closing argument maintained that McGhee went to Alley Cat, where he waited outside--from a distance--for his girlfriend. Counsel contended that whether Kearney was near or behind the bushes was not relevant to McGhee's credibility. The defense argued that Kearney was not credible because she testified that McGhee was yelling and that "she was afraid of what would happen to her, her workers and

herself" and yet felt she could go outside and calm the situation down. Defense counsel argued that under such circumstances "there's no risk of threatening." Counsel also pointed out that Kearney herself testified that "she was not afraid at that time."

The prosecutor began his rebuttal closing argument by stating that "in candor to the Court, given what the defense argument has been . . . I do need to point out although this wasn't raised as evidence in this case, out of fairness to the defendant I believe I do need to point it out." The prosecutor explained that the defense started to impeach Kearney with her prior statement that she was afraid.

The prosecutor then elaborated on his understanding of the defense's impeachment efforts: "I believe what they were referring to was a portion of the written 252 that the witness was not confronted with."[4] The prosecutor acknowledged that the prior statement was not part of the evidence but stated that he did not have a problem with the court considering it.

> [PROSECUTOR:] I'm not going to raise that argument that she -- that is not part of the evidence in this case, I don't have a problem with the Court considering that that was included in the 252. I just put that out there in fairness

---

[4] The "written 252" refers to a prior statement that Kearney provided to police. However, the record indicates that the defense did not reference a prior statement during cross-examination.

6

>    to the defense.  Nonetheless, the State would still argue
>    that the witness be found credible.
>
>    THE COURT: So your representation in the 252 --
>
>    [PROSECUTOR]: The 2 -- in the 252 there was a statement
>    that I was afraid.  However, the State is urging the Court
>    to find that her testimony in court is credible.  I feel it
>    just as important to point out because I know that the
>    defense started asking about that but didn't finish laying
>    the foundation for it.  So just out of fairness, I just
>    think it's appropriate to note that for the Court.
>
>    THE COURT: And the portion of the 252 is that [Kearney] was
>    afraid?
>
>    [PROSECUTOR]: Correct, Your Honor, if I could just read
>    that portion for the Court?

Thus, after the prosecutor disclosed the existence of the prior

statement that was "not part of the evidence," the court asked

the prosecutor if the portion of the statement he was referring

to indicated that Kearney was afraid.  Upon affirming that the

"portion of the 252" did state this, the prosecutor asked if he

could read that portion.  The court then addressed defense

counsel.

>    THE COURT: May he read it?
>
>    [DEFENSE COUNSEL]: Yes, Your Honor.
>
>    [PROSECUTOR]: It reads: At that time I was afraid and call
>    the police.  The tense is incorrect in that.
>
>    THE COURT: All right, thank you. . . . . .

After the prosecutor read the portion of the prior statement

that stated Kearney was afraid and called the police

(hereinafter "252 Statement"), the court immediately rendered a

guilty verdict upon the charge.  The court explained that "this

is a matter of credibility and I do opt to believe the version of the complaining witness."

The district court sentenced McGhee and entered the Notice of Entry of Judgment and/or Order.[5]  McGhee filed a notice of appeal.

### B. Intermediate Court of Appeals (ICA) Proceedings

In his opening brief, McGhee argued that he was deprived of his right to confront and cross-examine witnesses because the State did not introduce Kearney's 252 Statement into evidence until after she left the courtroom and was no longer subject to cross-examination.  McGhee contended that the State could have introduced Kearney's 252 Statement during her testimony if the proper evidentiary foundation had been laid, but it chose not to seek its admission until after Kearney left the courtroom.

McGhee argued that Kearney provided inconsistent testimony as she testified on direct examination that she felt threatened but acknowledged on cross-examination that she was not afraid.  McGhee maintained that Kearney's acknowledgment corroborated his defense that he did not threaten her.  McGhee

---

[5]      McGhee was sentenced to one year of probation, a probation fee of $75, a crime fee of $55, and anger management assessment.  As a condition of probation, McGhee was required to stay away from Kearney and Alley Cat.

asserted that Kearney's lack of fear was relevant because it had a tendency to make it more probable that McGhee did not threaten her, as she did not act like a person who felt threatened.

Additionally, McGhee argued that Kearney's acknowledgment that she was not afraid was relevant because the outcome of the case depended on the credibility of the only two witnesses who testified. McGhee contended that he relied on Kearney's testimony that she was not afraid to establish that reasonable doubt existed as to whether he committed terroristic threatening in the second degree. According to McGhee, when the prosecutor sought to read Kearney's 252 Statement in closing argument, the prosecutor was concerned about Kearney's credibility and not about "fairness to the defense." McGhee asserted that the district court committed plain error when it admitted Kearney's 252 Statement into evidence.

In its answering brief, the State contended that McGhee waived any objection to the introduction of Kearney's 252 Statement because he consented to the prosecutor's reading of the statement during closing argument. The State also argued that the introduction of Kearney's 252 Statement that she was afraid was harmless beyond a reasonable doubt because it was irrelevant to establishing the elements of terroristic threatening. The State emphasized that "a victim's subjective

fear or lack of fear in response to a threat is not in itself relevant to whether the threat is a true threat" and that the determinative question was whether a reasonable trier of fact might fairly conclude that McGhee uttered his threats in reckless disregard of the risk of terrorizing another person.

The State also argued that Kearney's acknowledgment that she was not afraid of McGhee's threats only indicated that she did not fear bodily injury or death and had nothing to do with whether Kearney believed that McGhee would have carried out those threats. Further, even if Kearney's subjective fear or lack of fear was a tangential issue, the State contended that Kearney's 252 Statement was cumulative of her testimony that she felt threatened by McGhee's threats. The State concluded that if the evidence was considered in the most favorable light to McGhee, any consideration of the 252 Statement could not have contributed to McGhee's conviction.

In a summary disposition order, the ICA affirmed the district court's judgment. State v. McGhee, No. CAAP-14-0001217, 2015 WL 6452678 (Haw. Ct. App. Oct. 23, 2015). The ICA explained that it was not convinced that the 252 Statement was admitted into evidence or intended to be treated as evidence. Id. at *2. The ICA found that the State's offer to read Kearney's 252 Statement was not, in context, an offer to

10

introduce evidence, since the statement contradicted Kearney's testimony that she felt she could calm McGhee down. Id. Rather, the ICA found that the prosecutor wanted to disclose Kearney's prior statement, which was consistent with the defense's cross-examination, out of an abundance of caution. Id. The ICA also noted that the district court did not issue a ruling admitting the 252 Statement into evidence, nor did the district court mention the 252 Statement any further. Id. Thus, the ICA concluded that in looking at the closing argument exchange in context, it did not appear that the 252 Statement was admitted or meant to be treated as evidence. Id.

The ICA alternatively concluded that, even if the 252 Statement was admitted into evidence or intended to be treated as evidence, the substance of the statement was not relevant to the issues at trial. Id. The ICA reasoned that terroristic threatening does not require proof of actual fear. Id. Further, the ICA determined that the 252 Statement could not have contributed to McGhee's conviction because Kearney had already testified on direct examination that she felt threatened but went out to meet McGhee anyway. Id. Since the 252 Statement did not add to Kearney's credibility and arguably detracted from it, the ICA concluded that any committed error was harmless. Id.

11

Chief Judge Nakamura dissented, determining that the prosecutor committed prosecutorial misconduct by referring to the 252 Statement, which had not been admitted into evidence. Id. at *3 (Nakamura, C.J., dissenting).  The dissent pointed out that the prosecutor twice mentioned the contents of the 252 Statement before requesting to read it and although defense counsel did not object to the prosecutor's reading of it, the district court committed error when it received and considered the statement.  Id.

The dissent also rejected the prosecutor's explanation that the 252 Statement was referenced "in fairness to the defense," noting that the statement actually benefited the State.  Id.  The dissent noted that the 252 Statement supported the State's theory that McGhee committed terroristic threatening, contradicted Kearney's testimony on cross-examination that she was not afraid of McGhee, and diminished the effect of the defense's cross-examination of Kearney.  Id. Since the case depended on the credibility of Kearney and McGhee, the only two witnesses who testified at trial, Chief Judge Nakamura concluded that the improper introduction of the non-admitted evidence enhanced Kearney's credibility and "prejudicially affected McGhee's substantial rights."  Id.

12

Thus, the dissent would have vacated McGhee's conviction and remanded the case for a new trial. Id.

## II. DISCUSSION

In his application for writ of certiorari, McGhee argues that the ICA gravely erred in concluding that the district court did not commit plain error when it allowed the prosecutor in closing argument to read Kearney's 252 Statement, which had not been admitted into evidence. McGhee contends that the improper introduction of the 252 Statement deprived him of his right to confront and cross-examine Kearney. McGhee also asserts that Kearney's 252 Statement was inadmissible testimonial hearsay, and because he had no opportunity to question Kearney about the 252 Statement, its introduction during closing argument affected his substantial rights. In addition, McGhee urges this court to adopt the reasoning of Chief Judge Nakamura's dissent in the ICA decision.

### A. The Reading of Kearney's 252 Statement Was Improper.

During rebuttal closing argument, the prosecutor informed the district court that Kearney made a 252 Statement in which she stated, "At that time I was afraid and call the police." The 252 Statement was being referenced, according to the prosecutor, because "the defense started asking about that but didn't finish laying the foundation for it." However, the

13

record does not show that the defense had begun asking about the 252 Statement or had even mentioned it during its cross-examination of Kearney.  In any event, regardless of the prosecutor's stated benevolent intentions, the 252 Statement had not been admitted into evidence.

We have frequently stated that during closing argument, a prosecutor is "permitted to draw reasonable inferences from the evidence and wide latitude is allowed in discussing the evidence."  State v. Nofoa, 135 Hawai'i 220, 228, 349 P.3d 327, 335 (2015) (quoting State v. Clark, 83 Hawai'i 289, 304, 926 P.2d 194, 209 (1996)); State v. Basham, 132 Hawai'i 97, 112, 319 P.3d 1105, 1120 (2014) (quoting Clark, 83 Hawai'i at 304, 926 P.2d at 209).  Thus, it is "within the bounds of legitimate argument for prosecutors [as well as the defense] to state, discuss, and comment on the evidence as well as to draw all reasonable inferences from the evidence."  State v. Quitog, 85 Hawai'i 128, 145, 938 P.2d 559, 576 (1997) (emphasis added) (quoting Clark, 83 Hawai'i at 304, 926 P.2d at 209).  The scope of argument, therefore, "must be consistent with the evidence and marked by the fairness that should characterize all of the prosecutor's conduct."  State v. Rogan, 91 Hawai'i 405, 413, 984 P.2d 1231, 1239 (1999).

"Closing arguments are not the place to introduce new evidence outside the safeguards of the Hawai'i Rules of Evidence." Basham, 132 Hawai'i at 113, 319 P.3d at 1121 (citing State v. Yip, 92 Hawai'i 98, 111, 987 P.2d 996, 1009 (App. 1999) ("In closing arguments, it is improper to refer to evidence which is not in the record or has been excluded by the court.")). In Basham, we noted that a defendant's fundamental right to confront the State's evidence may be compromised when a fact not presented at trial is referenced by the prosecutor during closing argument. Id. at 118, 319 P.3d at 1126. In State v. Tuua, we held that the prosecutor "did not draw legitimate inferences from the testimony" and improperly went beyond the record in discussing the consequences of the jury's verdict. 125 Hawai'i 10, 14, 250 P.3d 273, 277 (2011). Recently, in Nofoa, we held that the circuit court abused its discretion when it permitted the prosecutor to present to the jury a fact not in evidence that resulted in substantial prejudice to the defendant. 135 Hawai'i at 228, 349 P.3d at 335. We observed that "[t]he timing of the introduction of the fact" in closing argument precluded the defendant from confronting it because "at that point defense counsel has no opportunity to contest or clarify what the prosecutor has said." Id. at 229-30, 349 P.3d at 336-37.

15

In this case, the ICA determined that the offer by the prosecution to read the 252 Statement was not, in context, an offer to introduce evidence. State v. McGhee, No. CAAP-14-0001217, 2015 WL 6452678, at *2 (Haw. Ct. App. Oct. 23, 2015). The ICA noted that the district court did not rule that the statement was admitted into evidence and did not mention it further. Id. Thus, the ICA concluded that "taking the exchange in context, it does not appear the statement was admitted or meant to be treated as evidence." Id.

However, it is of no consequence whether the 252 Statement was admitted as evidence by the district court in closing argument or meant to be treated as evidence. Nor is the propriety of disclosure of a fact not in evidence during closing argument dependent upon the intentions of the prosecutor. Unequivocally, a counsel's closing argument is not evidence, Quitog, 85 Hawaiʻi at 144, 938 P.2d at 575, and closing argument is not the time in trial to introduce new evidence, Basham, 132 Hawaiʻi at 113, 319 P.3d at 1121 (citing Yip, 92 Hawaiʻi at 111, 987 P.2d at 1009). Therefore, the district court could not have permitted the prosecutor's statement in closing argument to be admitted or treated as evidence.

The ICA instead should have determined whether the prosecutor's disclosure of the 252 Statement was within the

bounds of legitimate closing argument to state, discuss, and comment upon. Indisputably, the 252 Statement was not admitted into evidence during the evidentiary phase of trial. Further, the contents of the 252 Statement could not have been reasonably inferred from the evidence that had been introduced at trial. Quitog, 85 Hawaiʻi at 145, 938 P.2d at 576 (citing Clark, 83 Hawaiʻi at 304, 926 P.2d at 209). Therefore, the district court erred in permitting the prosecutor to reference and read the 252 Statement, as the statement was clearly outside the bounds of legitimate closing argument.[6] Id., 938 P.2d at 576.

**B. The 252 Statement Was Relevant to the Issues at Trial.**

The ICA alternatively concluded that the 252 Statement was irrelevant to the issues at trial even if the statement was treated or admitted as evidence. State v. McGhee, No. CAAP-14-0001217, 2015 WL 6452678, at *2 (Haw. Ct. App. Oct. 23, 2015). The ICA reasoned that "[t]he crime of Terroristic Threatening does not require proof that the victim was actually placed in fear by the statements of the defendant." Id. (citing State v. Chung, 75 Haw. 398, 413, 862 P.2d 1063, 1071 (1993) (quoting State v. Nakachi, 7 Haw. App. 28, 32, 742 P.2d 388, 391 (1987)) ("Actual terrorization is not a material element of the offense

---

[6] Part C addresses the potential prejudice of referencing and reading the 252 Statement.

17

of terroristic threatening.")). The State similarly contended that the prosecutor's reference in closing argument to Kearney's 252 Statement that she was afraid was harmless because it was irrelevant to establishing the material elements of terroristic threatening. The State maintained that "a victim's subjective fear or lack of fear in response to a threat is not in itself relevant."

While it is true that the court in Nakachi stated that actual fear is not a material element of terroristic threatening, the court went on to state that actual terrorization is, nevertheless, "evidence of the occurrence of the material elements." 7 Haw. App. at 32, 742 P.2d at 391 (emphasis added) ("Actual terrorization is not a material element although it is evidence of the occurrence of the material elements."). The Nakachi court explained that "[t]he question is whether upon the evidence a reasonable jury might fairly conclude that [the defendant] uttered his threats in reckless disregard of the risk of terrorizing [the complainants]." Id., 742 P.2d at 392 (citing State v. Halemanu, 3 Haw. App. 300, 304, 650 P.2d 587, 591 (1982)).

Thus, a complainant's fear caused by a defendant's words or conduct is relevant evidence in a prosecution of terroristic threatening, as such fear may be circumstantial

evidence that the utterance or conduct (1) was a "true threat,"[7] or (2) was intended to terrorize or in reckless disregard of the risk of terrorizing another person.  Id., 742 P.2d at 391-92.[8]  By the same token, a complainant's lack of fear may be circumstantial evidence that the defendant's words or conduct did not constitute a "true threat" or that the defendant did not act with the requisite state of mind.

In this case, contrary to the ICA's holding and the State's argument, the fear Kearney referenced in her 252 Statement was relevant as circumstantial evidence to proving that McGhee's words or conduct constituted a "true threat" and that McGhee acted with reckless disregard of the risk of terrorizing Kearney.  When the prosecutor referenced in closing

---

[7]  In a terroristic threatening prosecution, the State must prove beyond a reasonable doubt that a remark threatening bodily injury constitutes a "true threat" such that it was "objectively capable of inducing a reasonable fear of bodily injury in the person at whom the threat was directed and who was aware of the circumstances under which the remark[] [was] uttered," because those circumstances indicate that the threat was "so unequivocal, unconditional, immediate[,] and specific as to the person threatened, [that it] convey[ed] a gravity of purpose and imminent prospect of execution."  State v. Valdivia, 95 Hawai'i 465, 476, 24 P.3d 661, 672 (2001) (third alteration in original) (quoting Chung, 75 Haw. at 416-17, 862 P.2d at 1073).

[8]  Relatedly, this court has noted that a "threat" in the context of robbery statutes "may be proven and often must be proven by circumstantial evidence and reasonable inferences to be drawn therefrom."  State v. Iuli, 101 Hawai'i 196, 207, 65 P.3d 143, 154 (2003) (quoting Halemanu, 3 Haw. App. at 305, 650 P.2d at 592) (relying in part on the complaining witness's testimony that he felt threatened and fearful to conclude that there was a "threat").

argument Kearney's 252 Statement that she was afraid of McGhee and called the police, the statement, had it been properly admitted as evidence during the evidentiary stage of trial, would have corroborated Kearney's testimony on direct examination that she felt threatened and would have mitigated the effect of her testimony on cross-examination that she was not afraid. Thus, the existence of Kearney's fear made it more likely that McGhee engaged in behavior constituting terroristic threatening in the second degree and was, therefore, relevant to the issues at trial. Consequently, the ICA erred in concluding that even if the 252 Statement was admitted or treated as evidence it was irrelevant to the issues at trial.[9] This error contributed to the ICA incorrectly assessing the effect of the

---

[9] We note that while actual terrorization is not required to prove the terroristic threatening offense, this court's later decisions provide that constitutional considerations require that a "true threat" be made. Valdivia, 95 Hawai'i at 476, 24 P.3d at 672. Consequently, the Nakachi formulation would appear to create the potential for confusion, as on the one hand, actual terrorization is not required to prove the offense, but on the other hand, a "true threat" must be demonstrated, requiring the prosecution to prove that the defendant's words or conduct "was objectively capable of inducing a reasonable fear of bodily injury in the person at whom the threat was directed and who was aware of the circumstances under which the remark[] [was] uttered." Id., 24 P.3d at 672. Thus, evidence as to the complainant's reaction to the threat is a relevant consideration as to the objective capability assessment and in evaluating whether the threat was "'so unequivocal, unconditional, immediate[,] and specific as to the person threatened, [that it] convey[ed] a gravity of purpose and imminent prospect of execution.'" Id., 24 P.3d at 672 (first alteration in original) (quoting Chung, 75 Haw. at 416-17, 862 P.2d at 1073). Courts should therefore exercise caution in applying or instructing upon the Nakachi formulation.

252 Statement upon the evidence adduced at trial, which we next consider.

### C. The Error Violated McGhee's Substantial Rights.

An improper statement by the prosecutor in closing argument warrants a new trial if "there is a reasonable possibility that the error complained of might have contributed to the conviction." State v. Tuua, 125 Hawai'i 10, 16, 250 P.3d 273, 279 (2011) (quoting State v. Hauge, 103 Hawai'i 38, 47, 79 P.3d 131, 140 (2003)). To assess whether a prosecutor's improper statement in closing argument was harmless beyond a reasonable doubt, we evaluate three factors: "(1) the nature of the conduct; (2) the promptness of a curative instruction; and (3) the strength or weakness of the evidence against the defendant." Id. at 15-16, 250 P.3d at 278-79 (quoting State v. Mainaaupo, 117 Hawai'i 235, 252, 178 P.3d 1, 18 (2008)); State v. Barrios, 139 Hawai'i 321, 329, 389 P.3d 916, 924 (2016).

### 1. Nature of the Conduct

This court evaluates the level of the misconduct in determining whether the first factor favors holding that an improper statement was harmless. Barrios, 139 Hawai'i at 330, 389 P.3d at 925; see Tuua, 125 Hawai'i at 16, 250 P.3d at 279 (citing State v. Maluia, 107 Hawai'i 20, 27, 108 P.3d 974, 981 (2005)). As discussed, the prosecutor improperly referenced and

read in closing argument Kearney's 252 Statement, which stated that at the time of the incident, Kearney was afraid and called the police. The 252 Statement was not admitted into evidence, and its contents were not reasonably inferred from the evidence that had been presented.

As the basis for the disclosure of the 252 Statement, the prosecutor informed the court that it was necessary to point out that the defense started to impeach Kearney with her previous statement that she was afraid, which the prosecutor believed was in reference to Kearney's 252 Statement. However, the record indicates that the defense did not reference the 252 Statement during its cross-examination of Kearney.

The 252 Statement stating that Kearney was afraid was referenced four times during the prosecutor's rebuttal closing argument. Prior to the statement being read, the district court went so far as to confirm with the prosecutor that the 252 Statement to which the prosecutor was referring indicated that Kearney was afraid. Then, immediately after the prosecutor read the 252 Statement, the district court rendered its verdict explaining that "this is a matter of credibility and I do opt to believe the version of the complaining witness."

Kearney's 252 Statement was unquestionably relevant to establishing the offense of terroristic threatening as it could

have been considered as circumstantial evidence that McGhee's words or conduct resulted in a "true threat" and that McGhee acted with reckless disregard of the risk of terrorizing Kearney. On this record, it therefore cannot be said that McGhee was not prejudiced by the reading of the 252 Statement in rebuttal closing argument.

In addition, the prejudice was exacerbated by McGhee's inability to confront and cross-examine Kearney regarding her 252 Statement because of the timing of the prosecutor's disclosure, which was made during closing argument. Accordingly, the first factor weighs in favor of holding that the error was not harmless beyond a reasonable doubt.

### 2. Promptness of a Curative Instruction

Given the absence of a jury in this case, the presence or absence of a curative instruction is inapposite. Instead, a more appropriate inquiry is whether this court can conclude, based on the relevant circumstances, that the district court disregarded or did not consider the 252 Statement. Initially, it is noted that the prosecutor twice informed the district court that the 252 Statement was not in evidence, and the court did not foreclose the prosecutor from further discussing the statement. Instead, the district court asked about the 252 Statement and then verified through the prosecutor the substance

23

of the 252 Statement.  It was only at this point that the prosecutor asked about reading the 252 Statement, which the court facilitated by (1) not denying the prosecutor's request to read the statement, (2) obtaining the defense's approval for the statement to be read, and (3) then allowing the prosecutor to read the statement.  After the statement was read, the district court did not state on the record that it would disregard or not consider the 252 Statement in evaluating the evidence and thereupon proceeded to render its verdict.

Under such circumstances, it cannot be concluded that the district court disregarded or did not consider the 252 Statement or that McGhee was not prejudiced by the reading of the statement.  Consequently, the second factor weighs in favor of a determination that the improper reference to the 252 Statement was not harmless beyond a reasonable doubt.

### 3. The Strength or Weakness of the Evidence

"In close cases involving the credibility of witnesses, particularly where there are no disinterested witnesses or other corroborating evidence, this court has been reluctant to hold improper statements harmless."  Tuua, 125 Hawai'i at 17, 250 P.3d at 280.  Here, the evidence at trial consisted only of the testimony of Kearney and McGhee, "each of whom arguably had a potential interest or bias."  Id., 250 P.3d

24

at 280.  The State's evidence pertaining to the terroristic threatening offense depended on Kearney's version of events, which conflicted with McGhee's description of the incident. Therefore, the credibility of Kearney and McGhee was pivotal.

On direct examination, Kearney stated that she felt threatened, but on cross-examination, she testified that she was not afraid.  Thus, prior to the recitation of Kearney's 252 Statement, which indicated that she called the police because she was afraid, the trial court faced directly conflicting statements from Kearney.  The prosecution's reading of Kearney's 252 Statement during its rebuttal closing argument directly supported Kearney's testimony on direct examination and conflicted with her testimony on cross-examination, effectively tipping the scale in favor of her testimony on direct examination and enhancing her credibility.  Because the 252 Statement directly supported Kearney's testimony on direct examination, it bolstered the State's case.  In addition, the 252 Statement countered the effect of Kearney's acknowledgment on cross-examination that she was not afraid, weakening the defense's case.  Thus, the reading of the 252 Statement prejudicially affected McGhee's substantial rights.  Further, the defense had no opportunity to cross-examine Kearney

regarding her 252 Statement and no ability to rebut its assertions.

The third factor therefore weighs in favor of a conclusion that the error was not harmless beyond a reasonable doubt.

### 4. Application of Factors

An evaluation of all three factors indicates that the prosecutor's improper reading of Kearney's 252 Statement was not harmless beyond a reasonable doubt. Consequently, there is a reasonable possibility that the misconduct may have contributed to McGhee's conviction, and the conviction must therefore be vacated.[10]

### III. CONCLUSION

During closing argument, it was improper for the prosecutor to request, and for the district court to allow, the reading of Kearney's 252 Statement, which had not been admitted

---

[10] The State contended in its answering brief that McGhee waived any objection to the reading of the 252 Statement because he did not object at trial. However, "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Hawai'i Rules of Penal Procedure Rule 52(b) (1977). Therefore, even though there was no objection to the error at trial, this court "may recognize plain error when the error committed affects substantial rights of the defendant." State v. Staley, 91 Hawai'i 275, 282, 982 P.2d 904, 911 (1999) (quoting State v. Cullen, 86 Hawai'i 1, 8, 946 P.2d 955, 962 (1997)). The district court in this case plainly erred when it allowed the prosecutor to read in closing argument Kearney's 252 Statement, which was not in evidence. This error affected McGhee's substantial rights because it severely compromised McGhee's right to a fair trial.

into evidence.  The 252 Statement was clearly relevant to proving the terroristic threatening offense; the State's case was enhanced by the 252 Statement; and the defense's case was significantly prejudiced.  Thus, the error in this case was not harmless beyond a reasonable doubt.  Accordingly, the district court's judgment of conviction and the ICA's judgment on appeal are vacated, and the case is remanded to the district court for further proceedings.

Lianne M. Aoki and
William H. Jameson, Jr.
for petitioner

Brian R. Vincent
for respondent

/s/ Mark E. Recktenwald

/s/ Paula A. Nakayama

/s/ Sabrina S. McKenna

/s/ Richard W. Pollack

/s/ Michael D. Wilson

