**Electronically Filed
Intermediate Court of Appeals
CAAP-19-0000349
15-SEP-2020
07:56 AM**

NO. CAAP-19-0000349

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


STATE OF HAWAIʻI, Plaintiff-Appellee, v.
GRANT K. KANAKAOLE, also known as
Grant K.P.K. Kanakaole, Defendant-Appellant

APPEAL FROM THE DISTRICT COURT OF THE FIRST CIRCUIT
KANEʻOHE DIVISION
(CASE NO. 1DCW-18-0001611)


SUMMARY DISPOSITION ORDER
(By: Ginoza, C.J., and Chan and Wadsworth, JJ.)

Defendant-Appellant Grant K. Kanakaole, also known as
Grant K.P.K. Kanakaole (**Kanakaole**), appeals from the Judgment and
Notice of Entry of Judgment (**Judgment**), entered on March 28,
2019, in the District Court of the First Circuit, Kaneʻohe
Division (**District Court**).[1]  Following a bench trial, Kanakaole
was convicted of one count of Terroristic Threatening in the
Second Degree (**TT2**), in violation of Hawaii Revised Statutes
(**HRS**) § 707-717(1).[2]

---

[1]   The Honorable Patricia A. McManaman presided.

[2]   HRS § 707-717(1) (2014) provides:

A person commits the offense of terroristic
threatening in the second degree if the person commits
terroristic threatening other than as provided in section
707-716 [Terroristic threatening in the first degree].

HRS § 707-715 (2014) defines terroristic threatening by stating,
in relevant part:

continue...

The charge stemmed from a verbal altercation between Kanakaole and a woman (**Complainant**) who allegedly had taken his prescription glasses and thrown them in the ocean a day or two earlier. Kanakaole is alleged to have told Complainant during the altercation that if his wife were there, or found out that Complainant had gotten rid of his glasses, his wife would shoot or kill Complainant. On appeal, Kanakaole contends that the District Court wrongly convicted him based on insufficient evidence that he made a "true threat."

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Kanakaole's contention as follows and reverse the Judgment.

## I.   RELEVANT BACKGROUND

At trial, witness MF testified that on May 15, 2018, he was in the garage of his mother's residence in Kaneʻohe, when he overheard yelling "[n]ext door on our property," where his cousins, Jeffrey and Antonio, lived. MF walked down his mother's driveway and saw Kanakaole's car "[p]arked right in the . . . driveway on the other side of . . . [o]ur family property." MF knew Kanakaole through Antonio. Kanakaole did not live on the family property; he was there visiting.

MF testified that "[Kanakaole] came walking up towards his car from the lower part of . . . the property and as he got closer to his car, [MF] could hear [Kanakaole] yelling at [Complainant]." MF had no idea who Complainant was. "[MF] caught the tail end of it and [Kanakaole] was saying something to the fact that, he kept repeating about his prescription glasses being thrown in the water or the ocean, and he was saying that if

[2]/...continue

A person commits the offense of terroristic threatening if the person threatens, by word or conduct, to cause bodily injury to another person . . . .:

    (1)   With the intent to terrorize, or in reckless disregard of the risk terrorizing, another person[.]

my wife was here she would shoot you or kill you . . . for doing that."  Kanakaole was "walking towards his car and he was about to leave but . . . before he got into the car he yelled at her . . . and told her that[.]"  Kanakaole was "maybe 50 feet or more" from Complainant when he yelled at her.  MF "couldn't see [Complainant] but [he] could hear her yelling back."

MF testified that Kanakaole "was pretty upset[.]" [Kanakaole] said, fuck, . . . if my wife was here she would shoot you for doing what you did, you know, throw my glasses in the water, or ocean, whatever, for doing that.  If she was here, she would shoot you.  Or kill you.  Either one."  MF was about sixty feet away from Kanakaole when MF heard this.  MF heard Kanakaole say two or three times "if my wife was here, she'd shoot you, kill you[.]"

On cross-examination, MF testified that "Kanakaole was telling [Complainant], if my wife found out that you got rid of my prescription glasses she would come down here and . . . kill you or shoot you."  MF did not see Kanakaole try to hit, make a fist at, or point at Complainant.  Kanakaole did not display a gun, and his wife was not in the car or on the property, from what MF could see.

Kanakaole also testified.  He explained that on the date of the incident, he dropped off Antonio[3] at McDonald's. They had forgotten to close the gate where Antonio lived, so Antonio told Kanakaole to go back and lock it.  When Kanakaole arrived at the property, he saw Complainant, who had taken his glasses and was not supposed to be on the property.  Kanakaole told Complainant, "you took my glasses."  "And [Complainant] said, yeah, . . . I took the glasses and threw it in the ocean, but I got a job now and I'm gonna pay for it."

Kanakaole testified that he was upset, but he did not hit or push Complainant.  As he left the property, he was "venting," but Complainant was "far away" when he was talking – "maybe more than like [a] hundred feet away."  Kanakaole "[wasn't] saying like [he was] going to do anything to

---

[3]	In his testimony, Kanakaole referred to "Anthony," who appears to be the same person identified by MF as Antonio.

[Complainant,]" and he "wasn't . . . right in her face . . . screaming at her[.]  According to Kanakaole, he did not "yell out that if [his] wife was there, she would shoot [Complainant], that she would kill her[.]"  When asked what he was yelling, Kanakaole testified:  "I was just saying probably if my wife had a – like a gun she'd probably shoot me and [Complainant], so it wasn't like I was threatening her.  I was just yelling because I was mad that she didn't get off of the property when I kept asking her to leave because I was told to lock the gate."

The District Court found Kanakaole guilty of the TT2 charge.  The court reasoned in part:  "Certainly, if somebody said to you, if my wife or my husband finds out about it he's going to kill you, that would raise alarm in the normal person."  The court also found MF to be "wholly credible" and concluded that "[Kanakaole's] words weren't mumbling.  [His] words were loud, clear, and audible for the State's witness to be able to hear it and articulate it."

## II.  DISCUSSION

Kanakaole argues that the District Court wrongly convicted him of TT2 based on insufficient evidence "that his venting constituted a true threat that was so unequivocal, unconditional, [and] immediate, as to convey a gravity of purpose and imminent prospect of execution."

Sufficient evidence to support a conviction requires substantial evidence as to every material element of the offense charged.  State v. Grace, 107 Hawaiʻi 133, 139, 111 P.3d 28, 34 (App. 2005) (quoting State v. Ferrer, 95 Hawaiʻi 409, 422, 23 P.3d 744, 757 (App. 2001)).  Substantial evidence is "credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion." Id.  The evidence must be "viewed in the light most favorable to the prosecution and in full recognition of the province of the trier of fact," who must "determine credibility, weigh the evidence, and draw justifiable inferences of fact."  Id.

To establish that Kanakaole committed TT2, the State was required to prove beyond a reasonable doubt that Kanakaole

4

threatened, by word or conduct, to cause bodily injury to Complainant in reckless disregard of the risk of terrorizing her. See HRS §§ 702-206(3) (2014), 707-715(1), and 707-717(1). In other words, the State was required to prove, under the circumstances presented: (1) Kanakaole's statements that if his wife were there, or found out that the Complainant got rid of his glasses, his wife would shoot or kill Complainant (the conduct element); (2) bore the attributes of a "true threat" (the attendant circumstances element); and (3) Kanakaole recklessly disregarded the risk that his remarks would terrorize Complainant (the requisite state of mind). See In re PP, 133 Hawaiʻi 235, 240, 325 P.3d 647, 652 (App. 2014).

In State v. Valdivia, 95 Hawaiʻi 465, 24 P.3d 661 (2001), the Hawaiʻi Supreme Court discussed the "true threat" requirement for a terroristic threatening prosecution as follows:

> As our discussion reflects, [State v. Chung, 75 Haw. 398, 862 P.2d 1063 (1993)] judicially narrowed the meaning of the word "threat," as employed in HRS § 707-715, in order to salvage the statutes defining terroristic threatening offenses from unconstitutional overbreadth. As a result, Chung mandates that, in a terroristic threatening prosecution, the prosecution prove beyond a reasonable doubt that a remark threatening bodily injury is a "true threat," such that it conveyed to the person to whom it was directed a gravity of purpose and imminent prospect of execution. In other words, the prosecution must prove beyond a reasonable doubt that the alleged threat was objectively capable of inducing a reasonable fear of bodily injury in the person at whom the threat was directed and who was aware of the circumstances under which the remarks were uttered. Under the particular circumstances of Chung, as we have indicated, the "true threat" was "so unequivocal, unconditional, immediate, and specific as to the person threatened, as to convey a gravity of purpose and imminent prospect of execution."
>
> . . . .
>
> We agree with the California Supreme Court that the "imminency" required by [United States v. Kelner, 534 F.2d 1020 (2d Cir. 1976)], and hence by Chung, can be established by means other than proof that a threatening remark will be executed immediately, at once, and without delay. Rather, as a general matter, the prosecution must prove that the threat was objectively susceptible to inducing fear of bodily injury in a reasonable person at whom the threat was directed and who was familiar with the circumstances under which the threat was uttered. Of course, one means of proving the foregoing would be to establish, as in Chung and Kelner, that the threat was uttered under circumstances that rendered it "so unequivocal, unconditional, immediate, and specific as to the person threatened, as to convey a gravity of purpose and imminent prospect of execution." But another would be to establish that the defendant possessed "the apparent ability to carry out the threat," such that "the

> threat . . . would reasonably tend to induce fear of bodily injury in the victim."

Id. at 476-77, 24 P.3d 672-73 (citations and original brackets omitted).

Viewing the evidence adduced in the strongest light for the prosecution, we conclude that the evidence was insufficient to establish that Kanakaole's statements bore the attributes of a "true threat." On direct examination, MF testified that Kanakaole said, "[I]f my wife was here she would shoot you or kill you . . . for doing that." (Emphasis added.) MF later testified that Kanakaole said, "[I]f my wife was here she would shoot you for doing what you did, you know, throw my glasses in the water, or ocean, whatever, for doing that. If she was here, she would shoot you. Or kill you. Either one." (Emphasis added.) On cross-examination, MF testified that Kanakaole said, "[I]f my wife found out that you got rid of my prescription glasses she would come down here and . . . kill you or shoot you." (Emphasis added.) Despite the minor discrepancy in MF's testimony, the District Court found him credible, and we decline to pass upon that determination. See In re PP, 133 Hawaiʻi at 239, 325 P.3d at 651 ("we give full play to the right of the fact finder to determine credibility" (quoting Grace, 107 Hawaiʻi at 139, 111 P.3d at 34)); see also State v. Mitchell, 94 Hawaiʻi 388, 393, 15 P.3d 314, 319 (App. 2000) (minor inconsistencies in a witness's testimony do not make it incredible as a matter of law).

Nevertheless, on this record, we cannot conclude that either variation of the alleged threat was "objectively capable of inducing a reasonable fear of bodily injury in the person at whom the threat was directed and who was aware of the circumstances under which the remarks were uttered." Valdivia, 95 Hawaiʻi at 476, 24 P.3d 672. Both variations of Kanakaole's alleged threat are conditional, and there was no evidence adduced at trial that Kanakaole's wife was present on the property when the remarks were uttered, that she would "find out" about the missing glasses through Kanakaole or anyone else, or that Kanakaole (or his wife) possessed the apparent ability to carry

out the alleged threat. In addition, Kanakaole was at least fifty feet away from Complainant when he made the remarks, and was in the process of getting in his car and leaving the scene. Finally, and relatedly, there was no evidence adduced that Complainant felt threatened by Kanakaole's alleged threat.[4/] While "actual terrorization" is not required to prove the TT2 offense, the supreme court has stated:

> [A] complainant's fear caused by a defendant's words or conduct is relevant evidence in a prosecution of terroristic threatening, as such fear may be circumstantial evidence that the utterance or conduct (1) was a "true threat," or (2) was intended to terrorize or in reckless disregard of the risk of terrorizing another person. By the same token, a complainant's lack of fear may be circumstantial evidence that the defendant's words or conduct did not constitute a "true threat" or that the defendant did not act with the requisite state of mind.

State v. McGhee, 140 Hawaiʻi 113, 120, 398 P.3d 702, 709 (2017) (citation and footnotes omitted).

Notwithstanding the caustic and hyperbolic language that Kanakaole used, there is nothing in the record that could reasonably support a conclusion that the alleged threat was "so unequivocal, unconditional, immediate[,] and specific as to the person threatened, as to convey a gravity of purpose and imminent prospect of execution." Valdivia, 95 Hawaiʻi at 476, 24 P.3d 672; see also McGhee, 140 Hawaiʻi at 121 n.9, 398 P.3d at 710 n.9 ("[E]vidence as to the complainant's reaction to the threat is a relevant consideration as to the objective capability assessment and in evaluating whether the threat was 'so unequivocal, unconditional, immediate[,] and specific as to the person threatened, [that it] convey[ed] a gravity of purpose and imminent prospect of execution.'" (quoting Valdivia, 95 Hawaiʻi at 476, 24 P.3d at 672) (some internal quotation marks omitted)). Because there was insufficient evidence of a "true threat," there was insufficient evidence that Kanakaole violated HRS § 707-717(1). See In re PP, 133 Hawaiʻi at 246, 325 P.3d at 658.

---

[4/]    Indeed, after the District Court found Kanakaole guilty, the court stated that "in terms of sentencing, . . . I understand what the goal of the statute is, but I'm not hearing anything here that . . . [Complainant] was alarmed, that she stuck around. I didn't even necessarily hear that . . . [MF] was alarmed."

## III.  CONCLUSION

For these reasons, the Judgment and Notice of Entry of Judgment, entered on March 28, 2019, in the District Court of the First Circuit, Kaneʻohe Division, is reversed.

DATED:  Honolulu, Hawaiʻi, September 15, 2020.


On the briefs:

Walter J. Rodby
for Defendant-Appellant.

Sonja P. McCullen,
Deputy Prosecuting Attorney,
City & County of Honolulu,
for Plaintiff-Appellee.

/s/ Lisa M. Ginoza
Chief Judge


/s/ Derrick H.M. Chan
Associate Judge


/s/ Clyde J. Wadsworth
Associate Judge