**Electronically Filed
Intermediate Court of Appeals
CAAP-20-0000451
14-JUN-2021
07:49 AM
Dkt. 94 SO**

NO. CAAP-20-0000451

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


STATE OF HAWAIʻI, Plaintiff-Appellee, v.
RAYMOND K. NAKI aka RAYMOND NAKI, JR., Defendant-Appellant


APPEAL FROM THE CIRCUIT COURT OF THE SECOND CIRCUIT
(CASE NO. 2CPC-19-0000697(1))


SUMMARY DISPOSITION ORDER
(By: Leonard, Presiding Judge, Wadsworth and Nakasone, JJ.)

Defendant-Appellant Raymond Naki, a.k.a. Raymond Naki, Jr. (**Naki**), appeals from the May 13, 2020 Judgment; Conviction and Sentence; Notice of Entry (**Judgment**) entered against him and in favor of Plaintiff-Appellee State of Hawaiʻi (**State**) by the Circuit Court of the Second Circuit (**Circuit Court**).[1]

Following a jury trial, Naki was convicted of Terroristic Threatening in the First Degree (**Terroristic Threatening**), in violation of Hawaii Revised Statutes (**HRS**)

---

[1] The Honorable Rhonda I.L. Loo presided.

§ 707-716(1)(e) (2014),[2] and Abuse of Family or Household Member, in violation of HRS § 709-906 (2014 and Supp. 2018).[3]

Naki raises a single point of error on appeal, contending that there was insufficient evidence to convict him of Terroristic Threatening.

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Naki's point of error as follows:

Naki argues that the State failed to prove that Naki threatened, by word or conduct, to cause bodily injury to the complaining witness (**CW**) because CW was the sole witness to testify that Naki pointed the gun at her. Naki maintains that "a reasonable mind could not conclude Naki's guilt beyond a reasonable doubt" because CW's memory was impaired from the

---

[2]    HRS § 707-716 provides, in pertinent part:

**§ 707-716  Terroristic threatening in the first degree.**  (1) A person commits the offense of terroristic threatening in the first degree if the person commits terroristic threatening:

. . . .

(e)    With the use of a dangerous instrument or a simulated firearm[.]

. . . .

(2)    Terroristic threatening is a class C felony.

[3]    On appeal, Naki does not challenge his conviction for Abuse of Family or Household Member.

chaos, emotions, and alcohol flowing on the night of the alleged incidents.

HRS § 707-715 (2014) defines "Terroristic threatening" in pertinent part as follows:

> A person commits the offense of terroristic threatening if the person <u>threatens, by word or conduct, to cause bodily injury to another person</u> or serious damage or harm to property, including the pets or livestock, of another or to commit a felony:
>
> > (1)     With the intent to terrorize, or in reckless disregard of the risk of terrorizing, another person[.]

(Emphasis added).

"A person commits the offense of terroristic threatening in the first degree if the person commits terroristic threatening . . . [w]ith the use of a dangerous instrument."[4] HRS § 707-716(1)(e).  While proof of actual terrorization is unnecessary to sustain a conviction for Terroristic Threatening, "it is evidence of the occurrence of the material elements."  <u>See</u> <u>State v. Nakachi,</u> 7 Haw. App. 28, 32, 742 P.2d 388, 391 (1987), <u>accord</u> <u>State v. McGhee</u>, 140 Hawaiʻi 113, 120, 398 P.3d 702, 709 (2017) ("[A] complainant's fear caused by a defendant's words or conduct is relevant evidence in a prosecution of terroristic threatening, as such fear may be circumstantial evidence that the utterance or conduct . . . was intended to terrorize or in reckless disregard of the risk of terrorizing another person.").

---

[4]     It is undisputed that a Lorcin 9mm semiautomatic pistol, such as the one recovered in this case by the Maui Police Department (**MPD**), is a "dangerous" instrument within the meaning of the statute.  <u>See</u> HRS § 707-700 (2014).

Here, CW consistently testified that Naki approached her with a loaded gun and pointed it at her face while she dialed 911 in response to Naki punching her in the face during a heated argument over the couple's dog. CW stated that the gun was pointed at her within a foot of her face, while Naki yelled, "You want to fuck with me? I have nothing to lose." CW stated that she "just knew he was ready to do it, that he was ready to fire a bullet into [her] face." CW testified further that Naki continued to point the gun at her face even after her phone was knocked out of her hand and she had fallen to the ground. CW stated that Naki was still holding the gun and that she "felt like a hostage" when 911 eventually made contact with her. CW testified that she was "very afraid that he was going to hurt me in some way if I didn't get rid of them" and that she thought Naki would kill her if she didn't end the call with 911.

Naki argues that this testimony is insufficient to prove beyond a reasonable doubt that Naki threatened, by words and/or conduct, to cause bodily injury to CW. Naki notes that, at one point, CW testified that Naki told her to pick up the gun and shoot him. Naki contends that only CW testified that the gun was pointed at her, but her memory was impaired because of emotions, chaos, and drinking. In sum, Naki submits that the testimony of one witness is not substantial enough to sustain his conviction here. Naki cites no law in support of this particular proposition and the argument is without merit.

4

The Hawaiʻi Supreme Court has held that "the testimony of a single witness, if found credible by the jury, constitutes sufficient evidence to support a finding." Kekona v. Bornemann, 135 Hawaiʻi 254, 264, 346 P.3d 361, 371 (2015) (citing In re Doe, 95 Hawaiʻi 183, 196-97, 20 P.3d 616, 629-30 (2001)); see, e.g., State v. Mundon, 121 Hawaiʻi 339, 345-47, 219 P.3d 1126, 1133-35 (2009) (defendant convicted of Terroristic Threatening where complainant was sole eye witness and defendant contested material testimony); State v. Smith, 106 Hawaiʻi 365, 372-73, 105 P.3d 242, 249-50 (App. 2004) ("Sufficient evidence to support a conviction can be established through the testimony of a single witness."). Moreover, it is well-established that "guilt may be proved beyond a reasonable doubt on the basis of reasonable inferences drawn from circumstantial evidence." State v. Mitchell, 88 Hawaiʻi 216, 226, 965 P.2d 149, 159 (App. 1998) (quoting State v. Pone, 78 Hawaiʻi 262, 273, 892 P.2d 455, 466 (1995)).

In this case, CW's testimony was corroborated by both direct and circumstantial evidence elicited from witnesses for the State and the defense, as well as video, audio, and photographic evidence. Both CW's neighbor and the MPD dispatcher who answered CW's 911 call testified that they heard CW screaming as she requested emergency assistance to her home. The neighbor stated that "[i]t sounded like someone getting attacked. . . . I could just hear her high-pitched scream and thuds and whatnot. .

. . She had said you hit me. And then she said I'm calling 911. And then all I heard was her screaming again." The dispatcher testified that, out of the thousands of 911 calls she had received in her seven years as a 911 operator for MPD, CW's call stood out to her as being "very graphic" and that she got scared by the screaming she heard. The audio recording of CW's 911 call confirmed that she was screaming while Naki repeated "You want to fuck with me?"

While Naki and his father -- the only other witnesses in CW's home at the time of the alleged incidents -- testified that Naki did not point the gun at CW, both men testified that Naki and CW were fighting and that Naki was upset when he grabbed the gun and approached CW.[5] Naki specifically stated that he didn't want CW to call 911 and that he grabbed his gun, put a bullet in the chamber to "have it ready to fire," and approached CW with the gun pointed either angled upwards or across his body as he attempted to give her the gun to shoot him. Naki stated that CW went "hysterical," screaming and falling backwards when she saw him with the gun. Naki, still holding the weapon, stated that he grabbed the phone from CW and that she fell into the door frame as he told her "you want to F with me, you want to F with me."

_____

[5]     Although Naki Sr. testified that he didn't see Naki pointing the gun at anyone, he also testified that he did not know what his son was doing while CW was on the phone, was not "really looking [sic] these guys having their conversation," and had a "hard time remembering what happened that night."

Video footage captured on the Petcube camera kept in CW's living room was admitted into evidence and also showed that (1) Naki came at CW aggressively and hit her after she pushed him, (2) Naki was holding a gun and said "Don't do it" twice while CW called 911, and (3) Naki still had the gun in his hand when CW had her 911 call returned. Although Naki stated that he did not punch CW but instead merely pushed her in response to CW confronting and yelling at him, "Don't you ever get in my face like that again, you violent mother fucker," several photographs taken by Officer Miles were admitted into evidence depicting bruising and abrasions sustained by CW to her face, neck, arm, and back. MPD Officer Marvin Kalani Miles (**Officer Miles**) testified that CW told him that Naki punched her in multiple places, which Officer Miles recorded in his police report as CW stating that she was punched "everywhere." Officer Miles also testified that he was trained in recognizing indicia of intoxication and that the only signs or symptoms of intoxication he recognized on CW were the odor of alcohol, which Officer Miles also observed as to Naki, and that CW's eyes were red and watery, possibly due to her crying.

Although CW had been consuming alcohol during an earlier dinner party, and possibly after, which Naki argues renders her testimony unreliable, so too were Naki and his father. Despite her uncertainty as to exactly how many times Naki allegedly hit her prior to grabbing his gun, CW's testimony

7

as to Naki's actions in pointing the gun at her was consistent throughout the trial, as was her testimony as to Naki's demeanor and the fear she felt as he approached her during her 911 call. In sum, the terror CW testified to experiencing was corroborated by multiple witnesses, and audio and video recordings of her screams, and serves as circumstantial evidence that Naki's conduct was indeed intended to terrorize or in reckless disregard of doing so. See McGhee, 140 Hawaiʻi at 120, 398 P.3d at 709; see also Mitchell, 88 Hawaiʻi at 226, 965 P.2d at 159.

In essence, Naki asks this court to overturn the jury's assessment of the weight and credibility to be given to the evidence presented at trial, which we will not do. See State v. Wagner, 139 Hawaiʻi 475, 485, 394 P.3d 705, 715 (2017); Smith, 106 Hawaiʻi at 373, 105 P.3d at 250.

On the contrary, considering CW's testimony, together with the testimony of the neighbor and the 911 dispatcher, along with the video evidence of Naki hitting CW and holding the gun, as well as the photos of CW's injuries sustained the night of October 13, 2019, we conclude that there was substantial evidence in the record for the jury to find that Naki used a dangerous instrument, to wit, a Lorcin 9mm semiautomatic pistol, to threaten to cause CW bodily injury with intent to terrorize or in reckless disregard of the risk of terrorizing her, in violation of HRS § 707-716(1)(e).

Accordingly, the Circuit Court's May 13, 2020 Judgment is affirmed.

DATED: Honolulu, Hawaiʻi, June 14, 2021.

On the briefs:

Gerald T. Johnson,
for Defendant-Appellant.

Mark R. Simonds,
Deputy Prosecuting Attorney,
County of Maui,
for Plaintiff-Appellee.

/s/ Katherine G. Leonard
Presiding Judge

/s/ Clyde J. Wadsworth
Associate Judge

/s/ Karen T. Nakasone
Associate Judge