Electronically Filed
Intermediate Court of Appeals
CAAP-24-0000820
25-JUN-2026
07:55 AM
Dkt. 133 SO

NO. CAAP-24-0000820

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

STATE OF HAWAIʻI, Plaintiff-Appellee,
v.
DAVID RICHARD STEVENS, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE SECOND CIRCUIT
(CASE NO. 2CPC-23-0000274)

SUMMARY DISPOSITION ORDER
(By: Leonard, Presiding Judge and Wadsworth, J.,
with Gluck, J., concurring)

Defendant-Appellant David Richard Stevens (**Stevens**)
appeals from the November 8, 2024 Judgment of Conviction and
Sentence (**Judgment**) entered by the Circuit Court of the Second
Circuit (**Circuit Court**).[1]  Following a jury trial, Stevens was
found guilty of Murder in the Second Degree (**Second Degree
Murder**) in violation of Hawaiʻi Revised Statutes (**HRS**)
§ 707-701.5 (2014 & Supp. 2018).  Stevens was sentenced to life
imprisonment with the possibility of parole.

Stevens raises two points of error on appeal,
contending that the Circuit Court erred when it:  (1) failed to
issue curative instructions or take other proper action when the

---

[1]     The Honorable Kirstin M. Hamman presided.

prosecutor repeatedly committed prosecutorial misconduct; and (2) failed to provide the jury with an instruction on a lesser included offense of reckless manslaughter.

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised, we resolve Stevens's points of error as follows:

(1) Stevens argues that the prosecutor's closing and rebuttal arguments repeatedly crossed the boundary of permissible advocacy by, *inter alia*, speculating about motives and emotional states, mischaracterizing Stevens's statements, introducing new "facts" not in evidence, minimizing the State's burden of proof, and repeatedly making disparaging remarks about defense counsel in the presence of the jury. Stevens submits that the cumulative effect of these improprieties deprived Stevens of a fair trial.

Prosecutorial misconduct is "a legal term of art that refers to any improper action committed by a prosecutor, however harmless or unintentional." State v. Willis, 156 Hawaiʻi 195, 204, 572 P.3d 668, 677 (2025) (citation omitted). "Whenever a defendant alleges prosecutorial misconduct, this court must first decide: (1) whether the conduct was improper; and (2) if the conduct was improper, whether the misconduct was harmless beyond a reasonable doubt." Id. (cleaned up).

Stevens argues that the prosecutor's conduct was improper in closing argument when he described defense counsel's advocacy as "drama" and "outrage coming from the other side" designed to "distract you [the Jury], plain and simple, to throw

you off your game[.]" Stevens also argues that the prosecutor's following statements, made during rebuttal, were improper:

> Now, [defense counsel] makes a lot of hay about this -- about the State being required to prove a weapon, but the State is not required to prove a weapon. It's not in the instructions. But [defense counsel] is resting on that in hoping you'll take that.

Stevens argues that the statements constituted personal attacks against defense counsel that were intended "to diminish counsel's credibility and to suggest to the jury that legitimate objections and argument were manipulative or insincere."

The Hawaiʻi Supreme Court has held that "a prosecutor's comment is clearly misconduct where it constitutes an impermissible attack on defense counsel's integrity and operates to denigrate the legal profession in general." State v. Pasene, 144 Hawaiʻi 339, 370, 439 P.3d 864, 895 (2019) (cleaned up). The supreme court has repeatedly ruled that "[i]mpugning defense counsel's principles is serious misconduct" and "undermines a trial's fairness because it is a strike at the defendant over the shoulders of his counsel in an attempt to prejudice the jury against the defendant." State v. Riveira, 149 Hawaiʻi 427, 433, 494 P.3d 1160, 1166 (2021) (cleaned up) (quoting State v. Underwood, 142 Hawaiʻi 317, 327, 418 P.3d 658, 668 (2018)).

Other courts have noted the distinction between attacks on a defendant's arguments and attacks on defense counsel. For example, the Appellate Court of Connecticut explained:

> There is ample room, in the heat of argument, for the prosecutor to challenge vigorously the arguments made by defense counsel. It was not improper for the prosecutor to suggest that the defendant's attorney, by allocating a significant share of his closing argument to discussing what he deemed to be weakness in [a witness's] credibility and testimony, had attempted to divert the jury's attention away from the defendant's actions[.] Here, however, the prosecutor referred to the argument of the defendant's attorney as "smoke and mirrors[.]" We conclude that this

> aspect of the prosecutor's argument was improper because it implied, to whatever degree, that the defendant's attorney had not based his argument on fact or reason, but had intended to mislead the jury by means of an artfully deceptive argument. The prosecutor implied that the defendant's attorney intended to deceive and thereby impugned the integrity of the defendant's attorney. For that reason, the argument constituted prosecutorial misconduct.

State v. Orellana, 872 A.2d 506, 528 (Conn. App. 2005); see also State v. Fouse, 319 P.3d 778, 786 (Utah App. 2014) ("calling defense counsel's theory a distraction or irrelevant is permissible but accusing opposing counsel of using such a distraction as part of a purposeful scheme to mislead the jury is not"); United States v. Shan Wei Yu, 484 F.3d 979, 986-87 (8th Cir. 2007) (use of the term "red herring" in rebuttal argument is improper when combined with other statements alluding to defense counsel and deceitful trial tactics).

The dividing line between a permissible attack on defense counsel's arguments and an impermissible attack on the attorney is not always clear. See, e.g., State v. Tunoa, 113 Hawai'i 393, 402, 153 P.3d 464, 473 (App. 2007). Here, the prosecutor stated that defense counsel was trying to "distract" the jury - "to throw [the jury] off [their] game" - and "resting on that in hoping [the jury would] take that." Notably, the prosecutor repeatedly directed his remarks at defense counsel himself, rather than counsel's arguments or the defense theory of the case. The prosecutor said that defense counsel "scoffed" at a witness's testimony and was "outraged." We conclude that the prosecutor's statements constituted misconduct. Accord Riveira, 149 Hawai'i at 433, 494 P.3d at 1166 (holding that the

prosecutor's comment that defense counsel was trying to "trick" the jury constituted serious misconduct).

Stevens also argues that the prosecutor's references to Stevens's "rage" and "explosive anger," and the prosecutor's statement that Stevens "snapped," constituted misconduct. Stevens maintains that these arguments were improper because none of the witnesses at trial described Stevens as angry, enraged, or out of control. Stevens submits that even if frustration could somehow be inferred from the footage of his police interview, that reaction would relate solely to Stevens's mental state at the time of interrogation, not his mental state on the night of Patrick Wisely's (**Wisely**) death. This argument has merit.

"[I]t is well-established that prosecutors are afforded wide latitude in closing to discuss the evidence, and may 'state, discuss, and comment on the evidence as well as to draw all reasonable inferences from the evidence.'" Willis, 156 Hawaiʻi at 204, 572 P.3d at 677 (citation omitted). However, "[p]rosecutors are also forbidden from introducing new information or evidence in closing argument." State v. Hirata, 152 Hawaiʻi 27, 33, 520 P.3d 225, 231 (2022) (citation omitted). "[E]xpressions of personal opinion by the prosecutor are a form of unsworn, unchecked testimony and tend to exploit the influence of the prosecutor's office and undermine the objective detachment that should separate an attorney from the cause being argued." Id.

Here, the jury heard the prosecutor opine that Stevens's conduct in the recorded interview reflected "explosive anger," which was the same "explosive anger" that caused Stevens

to "snap[]" on the night of Wisely's death.  Yet, the jury heard no evidence that could legitimately support the prosecutor's claim:  no witness testified as to Stevens's mental state at the time of Wisely's murder.  The prosecutor's statements were not reasonable inferences from the evidence, and improperly expressed a personal belief about Stevens's mental state.  See id. (holding that the prosecutor's statement was misconduct where the jury heard no evidence that could legitimately support the prosecutor's claim); see also State v. Cardona, 155 Hawaiʻi 23, 38, 556 P.3d 369, 384 (2024) (holding that the prosecutor's comment that the defendant was "not scared" during an altercation based off the defendant's manner of riding an electric bicycle was improper).

Stevens also argues that statements made by the prosecutor about a baseball bat "improperly argued facts not in evidence by inventing a 'hypothetical' baseball bat and improperly bolstered Detective Kaneshiro's credibility."  Stevens contends that the "baseball bat" created a "new and highly inflammatory image unsupported by any testimony" that "served to heighten emotion, not illuminate the facts."

In some instances, the use of hypothetical illustrations is not considered prejudicial, even if improper.  See State v. Kupihea, 80 Hawaiʻi 307, 317-18, 909 P.2d 1122, 1132-33 (1996) (holding that the use of a hypothetical based on a fictional scenario to explain the law on extreme mental or emotional disturbance manslaughter was not prejudicial, where the circuit court "cautioned more than once" that the prosecutor's remarks "were not evidence[,]" the defense counsel was able to

refute the prosecutor's statements in rebuttal, and "the jury was properly instructed on the law"). However, here, unlike in Kupihea, the prosecutor did not create a hypothetical or fictional scenario to explain legal principles. Instead, the prosecutor suggested a baseball bat was the weapon used to murder Wisely - even though the detective who was on scene testified there was no object recovered as the weapon and the medical examiner testified that "a wide range of objects" could have caused Wisely's injuries. The "baseball bat" hypothetical was not a reasonable inference from the evidence; instead, the prosecutor encouraged new and inflammatory imagery. As Stevens argues, "[a] baseball bat evokes deliberate, forceful, and even sporting violence . . . . Injecting that imagery . . . served to heighten emotion, not illuminate the facts."

Also, unlike in Kupihea, Stevens's counsel objected - but the objection was overruled and no curative instruction was given. See id. at 317-18, 909 P.2d at 1132-33. Compounding the problem, the baseball bat argument was made in rebuttal, prohibiting defense counsel from confronting it. See, e.g., State v. Nofoa, 135 Hawaiʻi 220, 229-30, 349 P.3d 327, 336-37 (2015) (noting prejudice associated with improper rebuttal argument). We conclude that the prosecutor's "baseball bat" hypothetical was improper.

Stevens points to three other instances of allegedly improper conduct, which we conclude do not rise to the level of prosecutorial misconduct.

Finally, Stevens argues that the misconduct was not harmless beyond a reasonable doubt because it was cumulative,

7

there were no curative instructions, and the case rested largely on the testimony of Curtis Edward Bryant (**Bryant**) and Kenneth David Bonavia (**Bonavia**), who recounted Stevens's statements to them the day after Wisely died, but who were not witnesses to what happened to Wisely.  The State does not address this argument at all; instead, the State merely argues that there was no prosecutorial misconduct.

"Prosecutorial misconduct is not harmless beyond a reasonable doubt if there is a reasonable possibility that the misconduct complained of might have contributed to the conviction."  <u>Willis</u>, 156 Hawaiʻi at 204, 572 P.3d at 677 (citation and internal quotation marks omitted).  We consider three factors in applying the harmless beyond a reasonable doubt standard:  "(1) the nature of the prosecuting attorney's misconduct; (2) the promptness or lack of a curative instruction; and (3) the strength or weakness of the evidence against the defendant."  <u>Hirata</u>, 152 Hawaiʻi at 34, 520 P.3d at 232 (citation omitted).

The first factor weighs in favor of Stevens.  The multiple instances of prosecutorial misconduct undermined defense counsel's credibility and improperly inserted new evidence and personal opinion.  <u>See</u>, <u>e.g.</u>, <u>State v. Klinge</u>, 92 Hawaiʻi 577, 596, 994 P.2d 509, 528 (2000) (discussing potential prejudice of cumulative effect of multiple instances of misconduct).

The second factor also weighs in favor of a new trial, because no curative instructions were given.

The third factor is more neutral, somewhat favoring the prosecution.  There were no witnesses to Wisely's death.  <u>See</u>

8

State v. Conroy, 148 Hawaiʻi 194, 205, 468 P.3d 208, 219 (2020) (holding that "[o]f significance to a determination of the strength of the prosecution's case is that there were no witnesses to the altercation other than [the defendant] and [the complaining witness]"). On the other hand, Bryant and Bonavia testified that Stevens told them that he killed a guy. Stevens also had Wisely's blood on the top of his shoe and under his fingernail. However, Stevens repeatedly told the police detective that he heard Wisely moaning, so he went to check on him, and gave Wisely water at Wisely's request, and then left. In his police interview, Stevens denied killing Wisely. No object that could be pointed to as a potential murder weapon was located by the police.

On the record before us, we cannot conclude that there is *no reasonable possibility* that the prosecutorial misconduct *contributed* to Stevens's conviction on the charge of Second Degree Murder. Accordingly, we conclude that the prosecutor's improper conduct deprived Stevens of a fair trial and constitutes grounds for a new trial. See Pasene, 144 Hawaiʻi at 364, 439 P.3d at 889 ("Prosecutorial misconduct may provide grounds for a new trial if the prosecutor's actions denied the defendant a fair trial." (quoting State v. Agrabante, 73 Haw. 179, 198, 830 P.2d 492, 502 (1992)).

(2) Stevens argues that the Circuit Court erred in failing to give the jury a lesser included instruction for reckless manslaughter. A trial court is obligated to instruct the jury with respect to an included offense where there is a rational basis in the evidence for a verdict acquitting the

defendant of the offense charged and convicting the defendant of the included offense.  See HRS § 701-109(5) (2014).  We are remanding this case for a new trial.  We cannot determine whether this standard will be met based on the evidence presented at the new trial.  Accordingly, we decline to reach this issue.

For the reasons set forth above, the Circuit Court's November 8, 2024 Judgment is vacated and this case is remanded to the Circuit Court for a new trial.

DATED: Honolulu, Hawaiʻi, June 25, 2026.

On the briefs:

Joanne S.C. Hicks
(Hicks Law),
for Defendant-Appellant

Renee Ishikawa Delizo,
Deputy Prosecuting Attorney,
County of Maui,
for Plaintiff-Appellee

/s/ Katherine G. Leonard
Presiding Judge

/s/ Clyde J. Wadsworth
Associate Judge


CONCURRING OPINION BY GLUCK, J.

I fully concur with the majority's holding regarding prosecutorial misconduct.  I also concur with the majority that these errors were not harmless beyond a reasonable doubt, but I write separately because I believe that the third Willis factor weighs strongly in favor of the prosecution, making this a very close case.

The prosecution presented evidence from two individuals who interacted with Stevens around the time of Wisely's death. Bryant testified that on May 20, 2020, Stevens told Bryant that

"he [Stevens] was going to do away with all the homeless people." Bryant also testified that, the following day (May 21), Stevens said that "he had -- did something that -- last night that God was going to punish him for." Similarly, Bonavia testified that on May 21, Stevens told Bonavia: "I broke one of God's commandments last night" and "I killed a guy. Do you want to see the blood?" Stevens also told Bonavia that "he beat this man to death with a stick" and asked if Bonavia "wanted to see the body[.]"

Maui Police Department Detective Jonathan Kaneshiro testified that on May 21, 2020, he responded to a scene of a deceased male, identified as Wisely, at Waiola Church in Lahaina. Kaneshiro was notified about Stevens being a possible suspect and located Stevens on Front Street. Detective Kaneshiro testified that "[i]t appeared like he had blood on his hands and fingernails, especially kind of right around the fingernail area. And then it had what looked like blood on his shoes as well." A DNA analysis confirmed that the blood found on Stevens was most likely from Wisely.[1]

Detective Kaneshiro conducted an interview of Stevens at the police station, and the recorded interview was played in open court. In the interview, Stevens denied being involved with Wisely's death and he denied telling individuals that he killed someone. Stevens admitted that he encountered Wisely at Waiola

---

[1]     Criminalist Penny Kremer that "the probability of randomly selecting an unrelated individual with a DNA profile that cannot be excluded as a possible contributor to the partial major DNA profile from this item of evidence is one in greater than 8 trillion."

11

Church on the night of the incident. He stated that he noticed Wisely was "moaning" under a blanket, and he (Stevens) asked Wisely if Wisely was okay. Stevens stated that he "shook the blanket" and touched a water jug because he thought Wisely wanted some water. Stevens stated that he did not see any blood. He claimed that he "lifted" Wisely's head to help Wisely drink water twice, and that Wisely "poured water on himself." Stevens stated that, after fifteen to twenty minutes, he told Wisely he had to go and left the scene.[2] Stevens acknowledged that his DNA would be "all over."

When Detective Kaneshiro asked why Stevens had blood on his shoes, Stevens responded, "I don't know." Over the course of questioning, Stevens stated that he was "getting frustrated" because he had been there for "six to eight hours."[3] Detective Kaneshiro testified that when he questioned Stevens, Stevens became "agitated and very defensive." Detective Kaneshiro pressed Stevens about the blood on his shoe: Stevens had stated that Wisely's "face was okay," and that perhaps Stevens had stepped in some of Wisely's blood. Detective Kaneshiro asked Stevens how blood droplets could get on the <u>top</u> of Stevens's shoes; after additional questioning, Stevens stated, "I don't know about droplets."

In sum, Bryant and Bonavia testified that Stevens confessed to killing someone. Stevens had Wisely's blood on the

---

[2] Later in the interview, however, Stevens states he was at the scene for a half an hour.

[3] Stevens later stated, "I've been detained for six, seven, eight hours," and Detective Kaneshiro responded saying "it's only been four hours."

top of his shoe and under his fingernail, despite Stevens telling Kaneshiro that Stevens did not see any blood on Wisely. True, there was no eyewitness testimony to the murder itself. See Conroy, 148 Hawaiʻi at 205, 468 P.3d at 219. Nevertheless, I believe that the strength of the evidence here weighs heavily in favor of the prosecution.

"When reviewing the nature of prosecutorial misconduct, courts should inspect how the prosecution entwined its improper conduct within the case's contextual fabric." Riveira, 149 Hawaiʻi at 433, 494 P.3d at 1166 (holding that prosecutorial misconduct, including the prosecutor's closing argument that defense counsel was trying to "trick" the jury, was harmless where there were two eyewitnesses to the crime). Here, the prosecutorial misconduct – all of which occurred at closing argument – had little to do with the central evidence in the case. The prosecutor's improper arguments regarding rage, a baseball bat, and defense counsel's tactics neither bolstered nor undermined any of this evidence. Nevertheless, the Hawaiʻi Supreme Court has held that "[p]rosecutorial misconduct is not harmless beyond a reasonable doubt if there is a reasonable possibility that the misconduct complained of might have contributed to the conviction." Willis, 156 Hawaiʻi at 204, 572 P.3d at 677 (citation omitted; emphases added).[4] In applying this standard to the instant case, I agree with the majority's

---

[4] As the majority notes, the prosecution did not address Stevens's arguments as to harmlessness in its Answering Brief.

conclusion that the prosecutorial misconduct was not harmless beyond a reasonable doubt.

        DATED:  Honolulu, Hawaiʻi, June 25, 2026.

                                  /s/ Daniel M. Gluck
                                  Associate Judge